SARAH E. TAYLOR v. DAVID TAYLOR.

*Divorce -- A mensa et thoro -- Sufficiency of Evidence.*

1. Under the language of the statute (Bat. Rev. ch. 37, § 5,) the Courts, in actions for divorce *a mensa et thoro*, are to deal with and determine each particular case upon its own peculiar circumstances.

2. In such action, where the evidence showed that the defendant had repeatedly threatened to chastise the feme plaintiff and had boasted of having done so; that bruises were found upon her person inflicted by him; that she offered to return and live with him if he would agree not to whip her, which offer he declined &c.; *Held*, that the facts constituted a case of such indignities to the person as to render her "condition intolerable and life burdensome" and to entitle her to a divorce.

3. *Quære?* Are not the par ies in such action competent witnesses and compellable to give evidence for or against each other, except as to adultery?

(*Joyner* v. *Joyner*, 6 Jones Eq. 322; *Everton* v. *Everton*, 5 Jones 202; *Coble* v. *Coble*, 2 Jones Eq. 392; *Erwin* v. *Erwin*, 4 Jones Eq. 82, cited, distinguished and approved )

CIVIL ACTION for Divorce *a mensa et thoro*, brought by the plaintiff against the defendant and tried at Spring Term, 1876, of HERTFORD Superior Court, before *Moore, J.*

Upon the facts in the case, which are sufficiently stated in the opinion, His Honor held that admitting them to be true they did not constitute a sufficient cause for Divorce *a mensa et thoro*, and thereupon the plaintiff submitted to a nonsuit and appealed.

*Messrs. J. B. Batchelor* and *Gilliam & Pru len,* for plaintiff.
*Mr. Walter Clark,* for defendant.

BYNUM, J. This is an action for divorce *a mensa et thoro*, or as it is called in the English law, *a judicial separation.*

For although the prayer of the complaint is for a divorce from the bonds of matrimony, there are no facts set forth in the complaint which would entitle the plaintiff to that relief, and the case will therefore be considered under the prayer for general relief as an action for divorce from bed and board; for in this light only was the case considered and tried.

The action is brought under the 5th section of chapter 37 of Battle's Revisal, which is in these words ; "The Superior Courts may grant divorces from bed and board. on the application of the parties injured in the following cases ; * * *

"4th. If either party shall offer such indignities to the person of the other as to render his or her condition intolerable and life burdensome."

We are to consider whether the plaintiff has set forth in her complaint and proved on the trial, facts sufficient to entitle her to a divorce from bed and board under this section of the statute.

She alleges in her complaint and proves on the trial; 1. By the witness Steal, who lived in the family in 1871–'2, that he heard the defendant threaten to whip his wife and on one occasion saw two whips about the size of the little finger in the house, on the safe, and heard defendant say " he got them to brush his wife." 2. Another witness Gay lived with the defendant in 1871–'2, and testified that he heard him threaten to whip his wife and that he called her "a liar, a fool, and told her she was like her folks, the Vaughns, and had no sense ;" and also told the witness that he had "brushed" her and that if he had had a board he would have used that also ; and on another occasion he said that he had slapped her. 3. Witness Sarah Gay lived with the defendant in 1872, and heard him threaten to whip his wife and had seen *bruises*, two on her face and one on her rump, each as large as a half dollar. 4. Mrs. Hays lived with the family from 1869 to 1871, and heard the defendant

threaten to whip his wife and on one occasion saw him take
her violently and angrily from her chair; and testified that
he was unkind and fretful; spoke abusively to her and of
her family. 5. Vaughn testified that on one occasion he
went to the house of the defendant who met him and said,.
"I have just whipped your sister you can go in and see her
if you wish." He went into the house and saw a *bruise* on
her face. 6. Moore, at the request of mutual friends after
they parted, for the purpose of effecting a reconciliation,
went to see the plaintiff and defendant. The former told.
him that if the defendant would promise not to whip her,
she would return and live with him. Moore communicated
this message to him, and he refused to make the promise
and said that he would whip her when she deserved it or
when he saw fit, he did not remember which." The whip-
pings occurred about eight months before the separation.
There is evidence that the wife bore this treatment with.
patience and in silence; and there is no evidence whatever
that she gave, by word or deed, any provocation for the con-
duct of the defendant.

The objection is taken to the allegations of the complaint
in the nature of a demurrer that they "are not stated with.
sufficient precision of time and date." But they are stated
as if not more definitely than were the charges in the cases:
of *Coble* v. *Coble,* and *Erwin* v. *Erwin,* (*infra*) where this Court
held that the allegations of the grounds for the divorce were
sufficiently specific.

The question then is, do the facts alleged and proved con-
stitute such "indignities to the person as to render her con-
dition intolerable and life burdensome," within the meaning
of the statute? We think they do. The only case which
apparently opposes this conclusion is *Joyner* v. *Joyner,* 6
Jones Eq. 322. But that case is clearly distinguishable from.
ours. There it was held that inasmuch as there may be
circumstances under which a husband may strike his wife.

with a horse whip or with a switch, the application for divorce should set forth the provocation if any and the circumstances under which the blows were inflicted ; in other words should negative any legal provocation. The divorce in that case was denied, mainly upon the ground of the insufficiency of the pleadings in this respect, and not upon the ground that the blows and other indignities alleged in the complaint in that case. if committed without provocation, were insufficient to authorize the Court to grant a divorce *a mensa et thoro.*

*Everton* v. *Everton*, 5 Jones 202, is another case where a divorce was denied. But the decision of the Court in that, is no authority against the decision in this case ; for there no personal violence was committed or threatened. On the other hand, *Coble* v. *Coble*, 2 Jones Eq. 392, is an express authority that the statute is satisfied even though no violence may have been inflicted on the person, if threats of violence have been made. accompanied by charges of infidelity and the withdrawal of intercourse and the refusal to bed with the wife ; so in *Erwin* v. *Erwin*, 4 Jones Eq. 82. No personal violence was done, but threats were made by the jealous husband and he denied the paternity of the child with which his wife was pregnant. In the two last named cases the charges were held sufficient under the statute and a divorce from bed and board was decided.

The decisions of the Court in *Coble* v. *Coble* and *Erwin* v. *Erwin*, have not been controverted and must be taken to have settled the meaning of the words "indignities to the person" as used in the statute. Insulting and disgraceful language by itself addressed to the wife by the husband, may not be an "indignity to the person" in a legal sense, and so, slight personal violence without injury to the body or health, of itself, will not justify a divorce ; but both combined and frequently repeated would indicate such a degree of depravity and loss of self command as much more readily

to induce a Court to believe there was danger of bodily harm, and such a just apprehension of personal injury as to render cohabition unsafe. No undeviating rule has been as yet agreed upon by the Courts, or probably can be, which will apply to all cases in determining what indignities are grounds of divorce, because they render the condition of the party injured intolerable. The station in life, the temperament, state of health, habits and feelings of different persons are so unlike, that treatment which would send the broken heart of one to the grave, would make no sensible impression upon another.

In *Evans* v. *Evans*, 4 Eng. C. C. 310–11, the leading case upon the subject, Lord Stowell observed, that "a blow between parties in the lower conditions and in the highest stations of life bears a very different aspect. Among the lower clases, blows sometimes pass between married couples who in the main are very happy and have no desire to part; amidst very coarse habits such incidents occur almost as freely as rude or reproachful words; a word and a blow go together, still, even among the very lowest classes, there is generally a feeling of something unmanly in striking a woman; but if a gentleman, a person of education, the discipline of which *emollit mores* and tends to extinguish ferocity, if a nobleman of high rank and ancient family uses personal violence to his wife, his equal in rank, the choice of his affection, the friend of his bosom, the mother of his offspring, such conduct in such a person carries with it something so degrading to the husband and so insulting and mortifying to the wife, as to render the injury itself far more severe and insupportable. We may assume then that the legislature purposely omitted to specify the particular acts of indignity for which divorces may in all cases be obtained. The matter is left at large under general words, thus leaving the Courts to deal with each particular case and to determine it

upon its own peculiar circumstances, so as to carry into effect the purpose and remedial object of the statute.

In the present case, the parties, we are led to assume, belong to the respectable walks of life. What can be more humiliating and degrading to the wife, than to be told in the presence of the family and servants, that she is "a fool, a liar and like her folks the Vaughns, and had no sense !" He repeatedly threatens to chastise her, declares and boasts to his employees and servants that he has whipped her ; that he brushed her and would have used a board also if he had had it. He lays up whips in the house and boasts that they were put there to "brush" his wife. Bruises are found upon her face and upon her rump, showing that he had subjected her to the most degrading and ignominious chastisement, and on one occasion he had the indecent and insulting assurance to tell her brother that he had whipped his sister and asked him into the house to see her bruised face. When she offers to return to him if he would agree not to whip her, he not only rejects the offer, but repeats his determination to chastise her when she deserved it or he saw fit. Yet the case shows not a single provocation by word or act on her part. His conduct then, was wanton and malicious, unmanly and cruel, betraying such a spirit of insult, injury and wickedness, as evidently "rendered her condition intolerable and life burdensome." It was such conduct on the part of the husband "as rendered further cohabitation dangerous to the physical safety of the wife, or created in her such reasonable apprehension of bodily harm as materially to interfere with the discharge of marital duty." 1 Bishop on Marriage and Divorce, § 715, and following, where the subject is fully discussed and the cases referred to. Shelford on Marriage, &c. 427. We therefore think that the facts in evidence, if believed by the jury, entitled the plaintiff to a divorce from the bed and board of her husband.

As the case goes back for another trial, attention is called

to the question, whether both the plaintiff and defendant are not competent witnesses and compellable to give evidence for or against each other, upon all matters except to prove adultery. See Bat. Rev. ch. 37 § 7. ch. 17 § § 333, 338, 341, 342.

Error.

PER CURIAM.                                    *Venire de novo.*