CORNELIA A. R. JACKSON v. DANIEL JACKSON.

*Divorce—Pleading—Evidence—Allegata and Probata.*

1. When, in an action for divorce *a mensa et thoro*, there was no evidence of turning *feme* plaintiff out of doors at any time more than six months before the bringing of the action: *Held*, that the issue, " Did the defendant maliciously turn plaintiff out of doors?" was properly excluded.

2. It is not a sufficient compliance with the law, in such cases, to charge ill treatment generally, or that the condition of *feme* plaintiff was intolerable by reason of her husband's conduct; the complaint ought to show the particulars of the ill-treatment, and that it was without provocation on her part.

3. The complaint ought to show, and the Court, before granting such divorce, must see, either that the husband abandoned his family, or maliciously turned the plaintiff, his wife, out of doors, or endangered her life by cruel, torturous treatment, or offered such indignities to her person as rendered life a burden.

4. Where, in such case, facts stated in the complaint were not sufficient to constitute a cause of action: *Held*, that a motion to dismiss, made for the first time in the Supreme Court, should be allowed.

5. The defects in this case were such as might have been cured by amendment of the complaint, by leave of the Court, so as to correspond with the verdict and judgment.

This was an ACTION for divorce, tried at October Term, 1889, of the Superior Court of WAKE County, before *Armfield, J.*

The complaint was as follows :

Cornelia A. R. Jackson, the plaintiff in the above entitled action, complains of the defendant Daniel Jackson, and says :

1. That she was lawfully married to the said Daniel Jackson about A. D. 1845; that she has been a true and faithful wife to him, and they raised several children.

105—28

2. That up to a few years ago she has lived with the said Daniel Jackson in comparative peace and quiet, doing her duty faithfully as a wife and mother.

3. That since his severe sickness (about 1884) he has become, in a measure, impotent, and generally unable to perform family duty, and, in consequence, became violently jealous of her, the said plaintiff, and began to treat her cruelly and barbarously, so as to endanger her life—frequently at night, when no other person in the house was awake, taking his fist and threatening to mash her brains out, and that, in consequence, she was afraid to retire to rest at night.

4. That recently he maliciously turned her out of doors, and refused to allow her to return to her home, threatening that if she did so return he would kill her.

5. That the tract of land on which the said Daniel Jackson now resides, and from which he turned her out, is her separate estate, and she also has some articles of personal property now in the possession of the defendant; that the defendant's annual income is about $500

Therefore, she prays the Court—

1. That she be granted a divorce from bed and board from the defendant Daniel Jackson.

2. And for alimony.

3. For her costs in this action, and for such other relief as the Court shall direct.

After denying specifically each allegation of the complaint, for a further defence defendant says:

1. That some time during the summer of 1888 his wife did go from home to a certain place he was opposed to her going, to-wit, to a certain church, of which defendant had been a member, which church had been recently removed from the old place where it was originally located, against the defendant's will and desire, and after its removal he did not wish his wife to go to the same, and he

was angry when she did go; but he soon got over his anger and tried to get plaintiff to come back to her home and live as she had done for so many years, promising to treat her kindly and furnish her to go where she pleased and come when she chose; defendant offered to divide his lands with her and give bond that he would in nowise impose on her; for two years past plaintiff has not demeaned herself towards defendant as a wife should.

2. That defendant has no ill feelings toward his wife, but is earnestly desirous that she should return to her home; that she has been to his house once since she left, and offered to come and live with defendant if he would enter into a bond in the sum of two hundred dollars not to mistreat her, which defendant then and there agreed to do, and parted with her with this understanding; but defendant is informed, and believes, that she was dissuaded from coming back to her home by other parties; and he believes that, if she was left free from persuasion of others, she would return and live with him, as he desires she should, and as she agreed to do.

3. That defendant is a cripple, unable to walk without a crutch which he has had to use for thirty-six years; he is in the sixty-fourth year of his age; his property consists of a tract of land containing one hundred and thirty-five acres, one horse, and hogs, a little house furniture, a few farming tools, and a small amount of provision on hand, not more than enough to last him three months—this constitutes defendant's whole property. He has no income beyond a support from his farm, and last year his farm did not pay expenses. He is unable to work and has to depend on the labor of others to make a support out of his land, and a bare support is all that it will yield him, especially in the absence of his wife he having to hire everything done.

Defendant is anxious that his wife should return to her home, and offers to live in peace with her and make her

home as pleasant as it is in his power to do, and provide for her to the extent of his ability.

CASE ON APPEAL.

There was evidence from the plaintiff and other witnesses tending to show that defendant, for a number of years, by cruel and barbarous treatment, endangered the life of plaintiff, and that defendant, on numerous occasions, offered such indignities to the person of plaintiff as to render her condition intolerable and life burdensome; that this occurred over six months before the filing of the complaint.

The witnesses testified that defendant, upon many occasions, drove plaintiff from his bed and inflicted serious bodily injury upon her person by kicking, bruising and the like, and, on one occasion, struck her on the head a terrible blow with a large stick, and nearly killed her; and that defendant continued this treatment until he maliciously turned plaintiff out of doors a few days before this action was brought; and there was no exception to this evidence.

His Honor withheld the third issue from the jury because it appeared in evidence that the defendant turned plaintiff out of doors within six months before the complaint was filed; and all the issues set out in the record (except the third issue, which was withdrawn from the jury) were found in favor of the plaintiff.

Upon the question of alimony, the Court offered to hear evidence from the defendant. No evidence was introduced by him, and the Court, being satisfied that the alimony set out in the judgment was reasonable and fair, after hearing the evidence, gave the judgment set out in the record.

Defendant offered to prove that, after the commencement of this action, he had sent word to plaintiff to come back and live with him, and he would "treat her just as he always had."

The Court excluded this testimony, and the defendant excepted. Verdict for plaintiff. Defendant appealed.

The issues and findings were as follows:

1. Have the plaintiff and defendant been lawfully married, and have they lived together as man and wife? Answer: Yes.

2. Have plaintiff and defendant been citizens and residents of the State for two years before bringing this action? Answer: Yes.

3. Did the defendant maliciously turn plaintiff out of doors? (*This issue not given to jury.*)

4. Did the defendant, by cruel and barbarous treatment, endanger the life, or, permanently, the health of plaintiff? Answer: Yes.

5. Did the defendant offer such indignities to the person of plaintiff as to render her condition intolerable and life burdensome? Answer: Yes.

6. Was the defendant insane and irresponsible for his actions at the time of the happening of the causes alleged for divorce? Answer: No.

7. Has the defendant offered, in good faith, since the happening of the alleged causes of divorce, to take the plaintiff back to his home and treat her kindly? Answer: No.

The Court rendered judgment that the plaintiff be divorced from bed and board; for an allowance of fifty dollars, to be paid before January 1st, 1890; for the rents from one-third of defendant's land, to be laid off by the surveyor and two freeholders, as alimony, who were to report to the next term, the cause being retained for further hearing.

*Messrs. J. B. Batchelor* and *Jno. Devereux, Jr.*, for plaintiff. *Mr. J. H. Fleming*, for defendant.

AVERY, J., after stating the facts: The defendant's counsel moves in this Court to dismiss because the facts stated in

the complaint are not sufficient to constitute a cause of action, and we think that the motion should be allowed. The Judge properly refused to submit the issue growing out of the fourth paragraph of complaint and answer, because there was no evidence tending to show that the plaintiff had been turned out of doors by her husband more than six months before the action was brought. The petition rests for support solely upon the allegation that the husband "became violently jealous of her, the said plaintiff, and began to treat her cruelly and barbarously, so as to endanger her life; frequently at night, when no other person in the house was awake, taking his fists and threatening to mash her brains out, and that, in consequence, she was afraid to retire to rest at night." It is not a compliance with the law, in such cases, to charge ill treatment generally in the complaint, nor to state simply that the condition of the complainant was intolerable and her life burdensome by reason of the conduct of her husband towards her. It must appear to the Court, from specific allegations as to the treatment of the husband on particular occasions that he, without sufficient provocation on her part to justify his conduct, either abandoned his family, maliciously turned her out of doors, endangered her life by cruel and barbarous treatment, or offered such indignities to her person as to render her condition intolerable and her life burdensome. The Court must see that if the complainant can make good her allegations by proof, the case will be brought within the provisions of the statute. *Wilcox* v. *Wilcox*, 1 Ired. Eq., 36; *Erwin* v. *Erwin*, 4 Jones' Eq., 82; *McQueen* v. *McQueen*, 82 N. C., 471; *White* v. *White*, 84 N. C., 340; *Scoggins* v. *Scoggins*, 85 N. C., 347; *Everton* v. *Everton*, 5 Jones, 202; *Joyner* v. *Joyner*, 6 Jones' Eq., 322; *Harrison* v. *Harrison*, 7 Ired., 484.

The marriage contract is the most important to society in the catalogue of contracts, and the Courts have held parties seeking divorce to strict proof, not only in conformity to a

fair construction of the statutes relating to the subject but in accordance with the dictates of public policy. We can find no satisfactory allegation that her husband endangered her life by cruel and barbarous treatment, for it does not appear that he struck or offered to strike her, but the specification is "by taking his fists and threatening to mash her brains out, and that, in consequence, she was afraid to retire to rest," &c. Neither does it appear that he offered any indignity whatever to her person. So that the petitioner does not bring her case within the meaning of the statute. But if it were doubtful whether his conduct, considered alone, would furnish sufficient ground for the application, the Court must know more fully the circumstances under which the threats were made, and especially whether these threats were uttered under the influence of a sudden ebullition of harmless passion, provoked by some taunting language or more active demonstrations of hostility on her part. While it is not necessary to specify the precise time, it is but just to the defendant that the occasion, or occasions, on which he indulged in such threats and exhibitions of temper should be so identified, by giving the attendant circumstance-, as to enable him to understand the precise charge preferred against him, and prepare to meet it by proof, if he can. *Joyner* v. *Joyner*, *supra; Everton* v. *Everton*, *supra; White* v. *White*, *supra.*

If threats of violence and exhibitions of jealousy are accompanied by withdrawal of intercourse, or by turning the wife out of the husband's house, without provocation, then such facts constitute sufficient ground for the application. The cases of *Taylor* v. *Taylor*, 76 N. C., 436; *Coble* v. *Coble*, 2 Jones' Eq., 392; *Griffith* v. *Griffith*, 89 N. C., 114, and *Erwin* v. *Erwin*, 4 Jones' Eq., 82, are distinguishable from this, in the fact that there was an allegation of expulsion of the wife from her husband's house, or refusal of marital intercourse, in all of them so long before the bringing of the action as to permit proof of the fact.

The motion made by defendant's counsel must be entertained by the Courts exercising either original or appellate jurisdiction at any stage of the proceeding in either Court, and the power may be exercised *ex mero motu* when the failure of a plaintiff to acquire a status in Court, by stating a cause of action, is manifest. *Knowles* v. *Railroad,* 102 N. C., 62.

The radical defect in this case could have been cured only by amendment of the complaint, by leave of the Court, upon such terms as might have been prescribed, so as to make its allegations correspond with the proof and verdict. *McQueen* v. *McQueen, supra.* There must be a *venire de novo.*

Error.                                                        New trial.