### EVELYN POLLARD v. WILLIAM POLLARD.

(Filed 4 March, 1942.)

**1. Divorce § 13—**

In an action for alimony without divorce, C. S., Supp. 1924, sec. 1667, plaintiff must meet the requirements of the statute for divorce from bed and board, and must allege with particularity the acts of the defendant

constituting the basis of the charge that he offered such indignities to her person as to render her condition intolerable, and allege that such acts were without adequate provocation on her part.

**2. Same—**

Where, in an action for alimony without divorce, the complaint fails to allege that the acts of defendant complained of were without adequate provocation on the part of plaintiff, the Supreme Court may sustain a demurrer *ore tenus* to the complaint.

**3. Same—**

Plaintiff is entitled to alimony without divorce if she can sustain by competent evidence either one of the grounds alleged, in this case that defendant offered such indignities to her person as to render her condition intolerable and her life burdensome, and that plaintiff was compelled to leave the house of defendant because of his failure to provide for her support and his cruel, contemptuous and inhuman treatment of her.

**4. Same—Evidence in this action for alimony without divorce held insufficient to resist defendant's motion to nonsuit.**

Evidence disclosing an estrangement in the marital relationship and the failure and refusal of the defendant to place his home in their joint names, as promised by him prior to the marriage, and his refusal to build up a joint savings account, and differences of opinion between them over certain other financial matters, is insufficient to show either indignities to the person of plaintiff or conduct constituting in law an abandonment by defendant, and defendant's motion to nonsuit in the wife's action for alimony without divorce based upon these two grounds should have been allowed.

APPEAL by defendant from *Johnston, Special Judge,* at Special September Term, 1941, of BUNCOMBE.

This is a civil action for alimony and counsel fees without divorce.

Plaintiff alleges in her complaint that defendant, as an inducement for her to marry him, made certain definite agreements, promises and assurances in writing about the conditions under which she would be required to live. That the two grown daughters of the defendant would soon be in a position to make their own way, and that after the payment of certain expenses in connection with the education of Pat, one of the daughters, the house would then resolve itself into theirs and that whatever was his would be hers. Plaintiff sets out in her complaint the contents of the letter written to her prior to her marriage to the defendant.

Plaintiff further alleges in her complaint that since the marriage the defendant, by long series of acts, words and conduct, has offered such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome; and that defendant has forced plaintiff by his cruel, contemptuous and inhuman treatment to leave the house of the defendant. That he has withheld support from her in accordance with his means and condition in life. That he refused to introduce her

as his wife for some months after the marriage. That she was required to go to a hospital for a very serious operation in the fall of 1939; that defendant requested her to give her maiden name in order that their marriage might not become known, and that he had his daughter accompany her to the hospital. Plaintiff alleges that defendant failed and declined to pay her hospital or medical expenses. That for many months after her marriage defendant failed to give her any money except a bare amount necessary to operate the house, and that until 1 April, 1940, did not give her any support except her actual household expenses. That on 1 April, 1940, the defendant gave her $25.00 per month from 1 January, 1940, as personal expenses, out of which she has been required to clothe herself and operate her own automobile which plaintiff purchased before her marriage.

Plaintiff alleges that after her return from the hospital the defendant's older daughter, who was then residing in New York, wrote a letter to the younger daughter which plaintiff read; that the letter cautioned the younger sister to watch her, that plaintiff was lazy and only wanted to be babied, and that as long as she could do the things she wanted to she was all right. That her sister should not do anything for plaintiff's mother, who was living in the home, because, after all, she was plaintiff's responsibility.

Defendant filed an answer denying any misconduct and alleging that the plaintiff voluntarily of her own free will and accord, and of her own determination, left defendant's home without any lawful reason or excuse and thereby abandoned the defendant.

Plaintiff offered testimony which she avers tended to prove the allegations in her complaint.

At the close of plaintiff's testimony, defendant moved for judgment of nonsuit. Motion overruled and defendant excepted.

Defendant offered evidence tending to show that plaintiff had received every consideration from the defendant; that he had made ample provision for her support and met all her demands except to transfer his property to her and request his children to leave his home.

At the close of defendant's evidence, defendant renewed the motion for judgment of nonsuit. Motion overruled and defendant excepted.

The court submitted the following issues:

"1. Did the defendant offer such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome? Answer: 'Yes.'

"2. Did the defendant abandon the plaintiff? Answer: 'Yes.' "

From judgment on verdict defendant appealed to the Supreme Court and assigns error.

POLLARD *v.* POLLARD.

*Williams & Cocke for plaintiff.*
*Smathers & Meekins for defendant.*

DENNY, J.　The defendant filed a demurrer *ore tenus* in this Court based on the failure of plaintiff to allege and set out specific acts of the defendant upon which she relies, with that particularity required by law, and upon the further ground that plaintiff does not allege the circumstances connected with the acts complained of, or allege facts in any manner showing that they were without adequate provocation upon her part.

Would this Court be justified in sustaining the demurrer *ore tenus?* We think so.

The plaintiff, in order to obtain affirmative relief under the provisions of C. S., Supp. 1924, sec. 1667, must meet the requisites of the statute for divorce from bed and board.　She relies upon the allegations in her complaint as to indignities and abandonment.

In *Carnes v. Carnes,* 204 N. C., 636, 169 S. E., 222, it is said: "In an action by a wife against her husband for divorce from bed and board, she must not only set out with particularity the acts of cruelty on the part of the husband upon which she relies, but she is also required to aver, and consequently to prove, that such acts were without adequate provocation on her part.　*Dowdy v. Dowdy,* 154 N. C., 556, 70 S. E., 917; *Martin v. Martin, supra* (130 N. C., 27, 40 S. E., 822); *O'Connor v. O'Connor,* 109 N. C., 139, 13 S. E., 887; *Jackson v. Jackson,* 105 N. C., 433, 11 S. E., 173; *White v. White,* 84 N. C., 340."

In *McManus v. McManus,* 191 N. C., 740, 133 S. E., 9, we find: "If the complaint does not allege sufficient facts to constitute a good cause of action under C. S., 1667, an order for temporary support and counsel fees, pending the trial of the issues, or a judgment requiring the husband to provide reasonable subsistence and counsel fees for the wife after the issues have been determined in her favor, is erroneous."

Nowhere does plaintiff allege in her complaint that the acts of the defendant were without adequate provocation on her part.

Regardless of the omission in the complaint referred to above, and granting that the allegations of the complaint are sufficient to justify the submission of the issues as to indignities and abandonment, was the evidence of the plaintiff sufficient to sustain the ruling of his Honor in overruling defendant's motion for judgment of nonsuit?　We are of opinion it was not.

The plaintiff testified: "Up to the time I went to the hospital, Eva, Pat and I were good friends and got along all right.　Up to that time Mr. Pollard was just as good to me as he could be."　"I would say Eva and I got along amicably."

POLLARD *v.* POLLARD.

On 7 March, 1940, plaintiff wrote a letter to the daughter residing in New York. The letter was introduced in evidence and covers 18 pages of the record, and the following statements are made in the letter: "My reason for writing you this morning even before I start the usual Thursday routine, is to inform you that, thanks to your engineering, the marriage between your father and I is being terminated, finished in other words."

The plaintiff alleges failure of defendant to pay her hospital and medical bills, but in her letter to Pat she states: "I have spent the best part of a thousand dollars since last July, all my own money. I spent my own money because it was then I realized for the first time money was scarce around here as you remarked one day sitting back here on the hill and it was my last thought to load a heavier load onto him."

The letter further states: "I knew about the plans for your further schooling and the allowance of $25.00 per month—and I was satisfied and contented to have it continue as long as necessary (with your cooperation to get through as quickly as possible and get on your own), but I certainly am not going to be content to have you girls so disregardless of the fact that I am and have not been getting anything while you have been getting all—that don't include your Dad for the Lord knows he has nothing for himself, which is another thing to be ashamed of considering his income per month and he needs plenty because of long want."

Plaintiff in her letter points out the fact that she has been able to reduce the expenses in the house by reason of careful buying, and states that Mr. Pollard has been there every day and that his expenses have been included, then she states: "I have been pretty discouraged with his attitude for some little time which I lay entirely to the hard work outside here—it don't take a master mind to figure that out—while he isn't old—yet he isn't a young man either and being confined to a desk is far removed from digging and hauling like he has been doing—I say the grounds are too much for a man to look after properly or as he should or would like to if he is at all interested in it and takes the right pride in it. Maybe you never thought of all this when you urged him to buy this property." "It seems the most tragic thing and it is that two people's lives can be wrecked through the work of others—queer thing your Dad and I have yet to have the first real difference between us that could solely be charged to either of us—it's all come about mainly through you."

According to the testimony of the plaintiff, the defendant was good to her up until the time she went to the hospital, 14 September, 1939. He had made her the beneficiary of a $10,000.00 life insurance policy, and in case of his death it was to be paid to her in installments of $100.00

per month.   She did not think the monthly payments were large enough, but no other agreement about the insurance was reached between them.

According to plaintiff's evidence, the defendant caused his checking account to be placed in his name and that of the plaintiff on 1 February, 1940.   Plaintiff testified she never drew any funds from the joint account, but she offered no evidence to the effect that she was requested not to do so.

The evidence in this case discloses that from the time plaintiff took over the duties of the household that the defendant furnished her $25.00 per month for incidentals for the house, certain money for groceries, and that he paid the other bills by check.   The plaintiff was given no personal allowance or pin money.   However, beginning with May, 1940, defendant thereafter gave her $25.00 per·month and gave her $100.00 covering the first four months of the year for that purpose.

Plaintiff further testified that "Along towards September, 1940, I asked him why he was so cold towards me, and he said that his feelings for me had changed, and that he no longer cared for me."   "In July, 1940, I did have a conversation with him in which he mentioned a separation.   He stopped in Buffalo and asked what I had decided, and told me that it was agreeable to him to call it quits.   He followed that up by telephone conversation a few weeks later and told me to go ahead with separation and get it over, the quicker the better."   "From the time of my conversation with him at the end of September, in which I tried to adjust things, he told me that he didn't care for me any more, that he had no feeling for me, and from then on there was no more physical relation between us as husband and wife.   No, I did not do anything to discourage it."   Plaintiff further testified that she slept with defendant every night until she left him.   "In December, 1940, when I attempted again to try and straighten those matters out and get on a better working basis, and a better understanding between us, he told me again that he no longer cared for me and that he thought a separation was the best solution.   Then, as a result of that, I did leave and brought this suit."

The record discloses that the matters to be straightened out between them related exclusively to the transfer of the house to her, living alone and the loss of affection on his part.

On cross-examination the plaintiff testified as follows: "I asked him to give me the home that he promised me before we were married.   I did not demand that he give me that house.   I asked him for the house he had promised me.   I asked him to change the deed and make it to me, if that was the home he wanted.   Yes, he did offer to make a deed to himself and me by the entirety, and his two daughters, so that if he died first I would get one-half of it.   I asked Mr. Pollard to start a

savings account with me. Yes, and put all his savings in that account, and leave it so I would get it all if he died."

Question: "What other grounds have you except that he refused to make the property to you like you wanted it?" Answer: "Except the fact that he told me he no longer cared for me."

The plaintiff relies on two grounds for relief, to wit: Indignities to the person of the plaintiff, rendering her condition intolerable and her life burdensome and that by reason of defendant's failure to support and his cruel, contemptuous and inhuman treatment she was compelled to leave the house of the defendant. If either of those allegations are sustained by competent evidence the plaintiff is entitled to the relief sought.

*McManus v. McManus, supra,* at p. 743: "The failure, neglect or refusal of a husband to comply with promises made to his wife, whether made before or after marriage, with respect to property or property rights, although the wife was induced by such promises to marry him, or to return to her husband, after she had voluntarily left him, subsequent to the marriage, cannot be held to justify the wife in leaving her husband, or if she does leave him, because of such failure, neglect or refusal, to entitle her to relief under C. S., 1667. While the law recognizes and enforces the rights of a wife in and to her husband's property, both during his lifetime and after his death, and will compel the husband so long as he lives to support a faithful and deserving wife according to his means and condition in life, it will not encourage marriages based solely upon mercenary consideration. The interest of the State and of society in the status resulting from marriage is too vital to permit a husband or a wife to absolve himself or herself from the performance of duties incident to and arising out of the marriage relation, merely because of disappointment as to the pecuniary results of the marriage."

*Dowdy v. Dowdy,* 154 N. C., 556, 70 S. E., 719: "It is not claimed in this case that the defendant departed from his home and abandoned the plaintiff, but the averment is that the wife was compelled to leave the defendant on account of his cruel treatment. While this is in law an abandonment by the husband (*High v. Bailey,* 107 N. C., 70), yet, as a ground for divorce, it is dependent upon the establishment of the acts of cruelty which it is averred compelled plaintiff to leave her home, and of the further fact that such acts were not the consequence of any adequate provocation upon the plaintiff's part."

The evidence discloses an estrangement in the marital relationship, and differences of opinion between the plaintiff and defendant over certain financial matters and the conveyance of the home to the plaintiff. However, this evidence is not sufficient to sustain the allegations by the plaintiff that she was forced, by cruel, contemptuous and inhuman treatment to leave the house of the defendant.

A careful review of all the evidence in this case, considered in the light most favorable to the plaintiff, is insufficient to sustain the allegations as to indignities or abandonment. A consideration of the other exceptions is not necessary.

The motion for judgment as of nonsuit should have been sustained.

Reversed.