EUGENE IRVIN ET AL., ADMINISTRATORS OF H. C. HARRIS, v. W. C. HARRIS ET AL.

(Filed 15 April, 1925.)

**1. Bankruptcy—Estates — Relinquishment of Assets—Election—Courts.**

Where a trustee in bankruptcy has determined that certain of the lands of the deceased bankrupt were valueless to the estate and would be a burden rather than an asset in his administration, and for this reason turns them over to the administrator of the deceased bankrupt to be used by him in settling his estate, which the bankrupt court has approved, his election so to do is irrevocably binding upon him, and upon the lands thereafter becoming valuable he may not claim the same as a part of the assets of the bankrupt estate.

**2. Same—Questions for Jury—Trials.**

*Held,* upon conflicting evidence in this case as to whether the trustee in bankruptcy had turned over to the administrator of the deceased certain lands as valueless, etc., or whether he had done so only for the purpose of administration and payment of debts, the question of full release or relinquishment of the lands was settled by the affirmative verdict of the jury.

**3. Same—Intervention—Actions—Guardian and Ward.**

Where the controversy is made to depend upon whether the widow of the deceased in her action was entitled to a certain fund in the administrator's hands of her deceased husband as against the trustee in bankruptcy of his estate, an intervener, in behalf of herself and her two children, as between the widow and her children, the better practice would be an independent adversary proceeding or the same may be determined in the present action by having a guardian *ad litem* appointed for the children who are minors.

APPEAL by intervener, Ira R. Humphreys, trustee in bankruptcy of W. C. Harris, from *Finley, J.,* at November Term, 1924, of ROCKINGHAM.

Civil action tried upon the following issues:

"1. Is Ira R. Humphreys trustee in bankruptcy of W. C. Harris? Answer: 'Yes.'

"2. Did said trustee elect to surrender possession of the Wells tract of land as onerous or burdensome property, and not to administer the same in the bankruptcy court? Answer: 'Yes.'"

From a judgment on the verdict, the trustee in bankruptcy appeals.

*Humphreys & Gwyn for intervener, appellant.*
*J. M. Sharp, P. W. Glidewell and Manly, Hendren & Womble for defendants.*

30—189

STACY, C. J. The question presented for decision arises out of the intervention, in the present proceeding, of Ira R. Humphreys, trustee in bankruptcy of W. C. Harris, and it is this: Did the said trustee in bankruptcy, as such, elect to relinquish all his right, title and interest in and to a certain tract of land, known as the Wells place, which passed by the will of H. C. Harris to his son, W. C. Harris, on the ground that said property was valueless to the estate of the bankrupt and would therefore prove to be a burden rather than a benefit? The jury has answered the question in the affirmative and we think without error appearing on the record.

The facts are these: H. C. Harris died 11 April, 1911, leaving a last will and testament in which he devised to his son, W. C. Harris, a farm known as the Wells place. The son entered into possession of this farm after his father's death. In July, 1913, W. C. Harris was adjudged a bankrupt, and Ira R. Humphreys was chosen as trustee of his estate. Immediately upon qualification, the trustee in bankruptcy took possession of the land in question and remained in possession thereof for about two years, when he surrendered the same to the administrators of the estate of H. C. Harris, deceased, with the consent and approval and by order duly entered of the court of bankruptcy.

The present proceeding, in which the trustee in bankruptcy of W. C. Harris has intervened and set up claim to the property, was instituted 7 September, 1915, by the administrators of the estate of H. C. Harris, deceased, for the purpose of selling all the real property belonging to said estate to make assets with which to pay the debts of the decedent. When this proceeding was started and the trustee in bankruptcy relinquished possession of the farm in question, it was thought by all interested in the matter that the estate of H. C. Harris, deceased, was utterly insolvent. But an unexpected advance in the price of real estate, and the rejection, as a result of litigation (182 N. C., 656, and 184 N. C., 547), of a group of claims filed against the estate, made it possible for the administrators to sell the lands of H. C. Harris, including the Wells tract, for more than enough to pay all of the debts of the deceased, and there was left from the proceeds of the sale of this particular tract of land, over and above the amount required for the payment of debts, the sum of $11,206.34. The present controversy is over the distribution of this fund, which has been paid into the clerk's office to await final judgment herein.

The trustee in bankruptcy claims the fund as a part of the estate of W. C. Harris, bankrupt. W. C. Harris died in 1915, and his widow, Mrs. Janie M. Harris, in her own right, and as guardian of her minor children, heirs at law of W. C. Harris, deceased, claims said fund by reason of the election of the trustee in bankruptcy to surrender said

property to the administrators of the estate of H. C. Harris, deceased, which election, she says, was irrevocably made. 1 Loveland on Bankruptcy (2 ed.), p. 372.

On the evidence, the case has been resolved by the jury in favor of the widow and children of W. C. Harris, deceased bankrupt.

It was suggested, during the progress of the trial, that the trustee in bankruptcy had probably been discharged, and was therefore *functus officio* and without authority to act in the matter, but upon the evidence it was agreed that the first issue should be answered by the court, leaving only the second issue for the jury.

The chief exception presented by the record relates to the sufficiency of the evidence to support the verdict.

Eugene Irvin, one of the administrators of the estate of H. C. Harris, deceased, speaking of the circumstances under which the alleged surrender and abandonment of the Wells place took place, said: "There was some controversy as to who should have possession of it. At that time it was considered more of a burden than an asset, and as Mr. Humphreys stated, he took possession of it and operated it that year and one other year, and he wanted to turn it over to us verbally. Under these circumstances we didn't care to take charge of it. That is why we got this paper-writing (order of the bankruptcy court confirming the surrender). Our attorneys advised us not to take possession unless we got it through the proper channels. This was in 1915. At that time the debts of H. C. Harris far exceeded the total value of his assets. There were claims filed in excess of $75,000.00, and the estimated value of the assets was about $40,000. It was under these conditions that he surrendered the Wells place."

The trustee in bankruptcy testified as follows: "I surrendered possession to Eugene Irvin and R. S. Montgomery, administrators. It was necessary to sell the land to pay the debts of H. C. Harris. I turned the land over to them, into the custody of the Superior Court of Rockingham County, to be administered. I did not surrender all rights to it. I turned it over to the Superior Court to take it and administer it and pay the debts, if it took all, to take it and do whatever was proper to do, because I had no right to administer the man's estate in the Federal Court. I thought it very doubtful that there would be anything left. I have so expressed myself."

The whole case was made to turn on which one of these contentions should prevail. Without further detailing the evidence, we think it was amply sufficient to warrant the verdict, and when properly considered with reference to the pleadings, the evidence, and charge of the court (*Kannan v. Assad,* 182 N. C., 77), it would seem to be determinative of the rights of the intervener.

It is well settled that a trustee in bankruptcy may refuse to take possession of onerous or burdensome property. *Sessions v. Romadka,* 145 U. S., p. 39. Upon his election to reject, the title to such property remains in the bankrupt; and it has been held that a failure on his part to elect within a reasonable time is deemed an election to reject. *Mesirov v. Innis Speiden & Co.,* 88 N. J. L., 548; *Sparhawk v. Yerkes,* 142 U. S., 1.

In *Cunningham v. Long,* 188 N. C., 613, the following was quoted with approval from *Dushane v. Beall,* 161 U. S., 513:

" 'It is well settled that assignees in bankruptcy are not bound to accept property which, in their judgment, is of an onerous and unprofitable nature and would burden instead of benefiting the estate, and can elect whether they will accept, or not, after due consideration and within a reasonable time, while, if their judgment is unwisely exercised, the bankruptcy court is open to compel a different course. (Citing authorities.) The same principle is applicable also to receivers and official liquidators. (Citing authorities.)

" 'If with knowledge of the facts, or being so situated as to be chargeable with such knowledge, an assignee, by definite declaration or distinct action, or forbearance to act, indicates, in view of the particular circumstances, his choice not to take certain property, or if, in the language of *Ware, J.,* in *Smith v. Gordon,* he, with such knowledge, "stands by without asserting his claim for a length of time, and allows third persons in the prosecution of their legal rights to acquire an interest in the property," then he may be held to have waived the assertion of his claim thereto.' "

So far as the appellant is concerned, this opinion might well be closed here; but we observe the judgment also undertakes to settle the respective claims of the widow and her children to the fund in question. As against the trustee in bankruptcy, they have made a common defense, but since the rendition of the verdict herein, their interests are no longer identical. Agreeable with the suggestion of counsel for defendants, we think the better practice would be to have the conflicting claims of the defendants determined in an adverse proceeding. This may be done in the present action by the appointment of a guardian *ad litem* for the minor children, as was the procedure in the case of *Carraway v. Lassiter,* 139 N. C., 145.

Judgment on the verdict will be affirmed, but vacated as between the widow and her children, and the cause remanded for further action not inconsistent with the above suggestion.

Affirmed in part and remanded.