VIVIAN R. TRAYWICK v. RALPH C. TRAYWICK

No. 7520DC696

(Filed 7 January 1976)

1. **Evidence § 12; Divorce and Alimony § 14— alimony without divorce — husband's relationship with other woman — wife's testimony admissible**

    Testimony by a wife concerning her husband's relationship with another woman will be excluded under G.S. 50-10 when it clearly implies an act of adultery, even though the words "adultery" or "intercourse" are not used, but when there is no clear implication of intercourse, the testimony is admissible; therefore, the trial court in an action for alimony without divorce did not err in allowing plaintiff wife to testify concerning defendant husband's visits with the female next-door neighbor where plaintiff was not attempting to prove that defendant committed adultery but contended instead that defendant offered her indignities by spending more time with the neighbor than with her and making it clear that he preferred the neighbor's company to that of his own wife.

2. **Evidence § 27— tape recordings — insufficient authentication — exclusion proper**

    The trial court properly excluded a tape recording of a conversation in which plaintiff admitted that she spat in defendant's face, since the recording was not authenticated in the manner required.

3. **Divorce and Alimony § 16— alimony without divorce — jury instructions improper**

    In an action for alimony without divorce where plaintiff alleged cruelty and indignities, defendant is entitled to a new trial since a part of the trial court's instructions had the effect of charging what *would,* rather than what *could,* constitute cruel or barbarous treatment, and another part of the instructions indicated that the jury could find that defendant offered plaintiff such indignities as to render her condition intolerable if defendant visited the female neighbor's home in the middle of the night on even one occasion or visited there "in undue number of hours," rather than on a repeated and persistent basis.

APPEAL by defendant from *Webb, Judge.* Judgment entered 15 March 1974 in District Court, UNION County. Heard in the Court of Appeals 20 November 1975.

Plaintiff wife brought this action against defendant husband for alimony without divorce, alleging cruelty and indignities. Defendant denied that he had engaged in any misconduct toward plaintiff and, in a further defense, alleged cruelty, indignities and constructive abandonment on her part.

Traywick v. Traywick

Plaintiff offered evidence tending to show: The parties were married in 1947 and have two adult children. In 1973, defendant began spending a great deal of time with Mrs. Carra Nelson, their next-door neighbor, whose husband had recently committed suicide. He visited her home every night and often stayed for several hours. There was no one else present at Mrs. Nelson's home except her two-year-old son. On one occasion defendant got out of bed in the middle of the night and went to visit Mrs. Nelson. After defendant began this relationship with Mrs. Nelson, on several occasions he kicked plaintiff, beat her with his fist, stepped on her feet, pulled her hair, and assaulted her in other ways. He locked her out of the house several times. On one occasion he cursed her in the presence of her daughter and her daughter's boyfriend. On 14 December 1973, he ordered plaintiff out of his bedroom, and thereafter they slept in separate rooms. After plaintiff brought this action, defendant moved into a duplex apartment next door to the family home. On one night after the separation, he called her on the telephone and cursed her and then came to her front door with a gun in his hand and threatened to "shoot a Magnum through the house."

Defendant offered evidence tending to show: He had visited Mrs. Carra Nelson only occasionally and had not had any improper relationship with her. Plaintiff's hostility to defendant began to develop some time before Mr. Nelson's suicide. Since then, she has spat in defendant's face, swung at him with her fist, struck him with a can, kicked him, screamed at him, and cursed him continually. On the night he threatened to shoot a magnum through her house, he did so because she had shot at his duplex three times.

Issues were submitted to, and answered by, the jury as follows:

1. Did the defendant by cruel and barbarous treatment endanger the life of the plaintiff as alleged in the Complaint?

ANSWER: "Yes"

2. Did the defendant offer such indignities to the plaintiff as to render her condition intolerable and her life burdensome?

ANSWER: "Yes"

3. Is the plaintiff substantially dependent upon the defendant for her support and maintenance, OR is substantially in need of maintenance and support from the defendant?

ANSWER: "Yes"

4. Is the defendant one on whom the plaintiff is actually substantially dependent or one from whom the plaintiff is actually substantially in need of maintenance and support?

ANSWER: "Yes"

5. Has the plaintiff offered such indignities to the defendant as to render his condition intolerable and his life burdensome?

ANSWER: "No"

6. Has the plaintiff, by cruel or barbarous treatment, endangered the life of the defendant?

ANSWER: "No"

From judgment entered on the verdict, awarding plaintiff alimony and other relief, defendant appealed.

*Clark and Griffin, by Richard S. Clark, for plaintiff appellee.*

*Thomas and Harrington, by L. E. Harrington, and William H. Abernathy, for defendant appellant.*

BRITT, Judge.

[1] Defendant contends the court erred in admitting testimony by plaintiff concerning his visits with Mrs. Nelson. The contention has no merit. Testimony by a wife concerning her husband's relationship with another woman will be excluded under G.S. 50-10 when it clearly implies an act of adultery, even though the words "adultery" or "intercourse" are not used. *Phillips v. Phillips*, 9 N.C. App. 438, 176 S.E. 2d 379 (1970). But when there is no clear implication of intercourse, the testimony is admissible. *Earles v. Earles*, 26 N.C. App. 559, 216 S.E. 2d 739 (1975), *cert. denied*, 288 N.C. 239, 217 S.E. 2d 679 (1975). Here, plaintiff was not attempting to prove that defendant committed adultery. She contended instead that

defendant offered her indignities by spending more time with Mrs. Nelson than with her and making it clear that he preferred Mrs. Nelson's company to that of his own wife. Her testimony was properly admitted under *Earles*.

[2]    Defendant contends the court erred in excluding a tape recording of a conversation in which plaintiff admitted that she had spat in his face. We hold that the tape was properly excluded for the reason that it was not authenticated in the manner required. *See State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971).

[3]    Defendant contends the court erred in giving the following instructions to the jury:

> "The Court instructs you, if you find from the evidence and by its greater weight that the defendant did on various times assault his wife *or* threaten his wife *or* display a firearm in her presence with a menacing attitude or threatening attitude, then it would be your duty to answer the (first) issue yes if you are satisfied from the evidence and by its greater weight. If you are not so satisfied, then you should answer it no." (Emphasis added.)

> *    *    *    *

> "The Court instructs you if you find that to be a fact by the evidence and by its greater weight, that Mr. Traywick was visiting in the home of this lady in the middle of the night *or* in undue number of hours *or* that for no good cause he threw her out of their bedroom, that he cursed her, if you find that to be a fact from the evidence and by its greater weight, then the Court instructs you, you should answer that second issue yes. If you are not so satisfied you would answer it no." (Emphasis added.)

This contention has merit.

In 1 Lee, N.C. Family Law § 81, pp. 306-307, we find: "There is no arbitrary rule or well-defined test for determining whether particular acts or conduct constitute cruelty; each case must be determined by its own facts and the surrounding circumstances. The status of the parties and their sensibilities, including their social position, refinement, and intelligence, as well as the character and nature of the acts or violence alleged, are among the factors considered. In 1955, the Supreme Court of North Carolina said: 'It would be impossible, and also unwise, to attempt to define with accuracy, so as to fit all cases,

what is cruel treatment by a husband that compels his wife to leave him. There is a species of cruelty, which cuts deeper than a blow. . . . ' " Citing *Bailey v. Bailey,* 243 N.C. 412, 415, 90 S.E. 2d 696, 699 (1956).

The first instruction challenged above had the effect of charging what *would,* rather than what *could,* constitute cruel or barbarous treatment. While a finding that defendant on various times assaulted plaintiff might *permit* an affirmative answer on the first issue, such a finding would not *compel* an affirmative answer. With respect to threats, there are degrees ranging from mild to violent threats. Certainly, a wife is not *always* entitled to alimony when her husband "threatens" her, however mildly, on several occasions.

The second challenged instruction related to plaintiff's contentions of indignities. In Lee, *supra,* § 82, p. 311, we find: " . . . The fundamental characteristic of indignities is that it must consist of a *course* of conduct or *continued* treatment which renders the condition of the injured party intolerable and life burdensome. The indignities must be *repeated and persisted in* over a period of time." (Emphasis added.) The quoted instruction called for an affirmative answer to the second issue if the jury found that even on one occasion defendant visited in Mrs. Nelson's home in the middle of the night or "in undue number of hours."

We hold that the challenged instructions were erroneous and that defendant was prejudiced by them, entitling him to a new trial.

New trial.

Chief Judge BROCK and Judge MORRIS concur.