RHONDA E. PUETT v. PATSY CAROL PUETT

No. 8427DC1111

(Filed 2 July 1985)

1. **Divorce and Alimony § 8.1— divorce from bed and board—not supported by findings and conclusions**

    The trial judge's order granting plaintiff a divorce from bed and board was not supported by his findings and conclusions where he found that plaintiff devoted an average of six to eight hours per week of his free time to a community rescue squad, found that plaintiff persisted in his rescue squad activities even though it disturbed his wife and caused her to suspect that he was unfaithful, found that plaintiff embarrassed his wife in public by calling her names, and expressly concluded that plaintiff was not blameless. G.S. 50-7(4).

2. **Divorce and Alimony § 17— divorce from bed and board—refusal to award alimony—no error**

    The trial judge's findings supported his conclusions that defendant was not entitled to alimony where the court found that plaintiff left the marital residence for just cause and that plaintiff's conduct was not such as to cause defendant's condition to become intolerable and her life burdensome. G.S. 50-16.2.

3. **Divorce and Alimony § 27— court's refusal to award attorney fees—no error**

    The trial judge did not err by denying defendant attorney fees where defendant was not entitled to alimony, there is no statute giving the district court judge authority to award attorney fees as to defendant's defense to plaintiff's action for divorce from bed and board, and there was no abuse of discretion in not allowing attorney fees on defendant's child custody and support counterclaim. G.S. 50-13.6, G.S. 50-16.3 and .4.

APPEAL by defendant from *Phillips, Judge.* Judgment entered 25 May 1984 in District Court, GASTON County. Heard in the Court of Appeals 4 June 1985.

The plaintiff, Rhonda E. Puett, and the defendant, Patsy Carol Puett, were married on 13 May 1967, and lived together as husband and wife until 4 July 1983. Two children were born of the marriage, Windy C. Puett, born 5 August 1968, and Kimberly D. Puett, born 21 September 1972.

After ten years of marriage, the defendant developed myasthenia gravis, a neuromuscular disease. Defendant underwent an operation and takes medication. Her physical condition is good, although occasionally she suffers weakness and is unable to per-

form her normal tasks. Defendant has not worked for four years. She receives full-time Social Security disability benefits in the amount of $314.00 for herself and $121.00 for her children per month.

On 16 January 1984, the plaintiff filed a complaint requesting a divorce from bed and board and an inquiry by the court into custody of the minor children. On 3 February 1984, the defendant filed an answer and a counterclaim requesting alimony pendente lite and permanent alimony, an award of the marital home and payments on it as partial alimony, child support, payment of all the children's medical and dental bills and insurance, payment of defendant's medical and hospitalization insurance, and defendant's reasonable attorneys' fees.

Plaintiff testified that in the last several years defendant's attitude towards him and the marriage changed substantially. Plaintiff testified that defendant argued with him constantly and refused to participate in any activities with defendant and his friends. Plaintiff was a member of Cherryville Rescue Squad and spent on average six to eight hours per week in its activities. Plaintiff testified that defendant was jealous of his activities with the rescue squad and accused him of having affairs with female members of the rescue squad. On one occasion after the parties had separated, plaintiff testified, defendant threw a cup of ice at a female member of the rescue squad, while her daughter accused the rescue squad member of having a relationship with plaintiff. Plaintiff testified that he had had no extramarital relationships. Plaintiff also testified that defendant told him on several occasions to get out, and to discontinue his activities with the rescue squad.

Defendant testified that plaintiff had on occasion embarrassed her in public by calling her names such as "lardass." She admitted that she and plaintiff had frequent arguments which she felt were principally caused by plaintiff's involvement with the rescue squad.

Plaintiff testified that his income is $375 per week after taxes and that his monthly living expenses are $540. Defendant testified that her monthly income is $435 and that her monthly living expenses are $649.

The trial judge granted plaintiff divorce from bed and board, and denied defendant's request for alimony and attorneys' fees.

*Simpson, Aycock, Beyer & Simpson, by Richard W. Beyer and Michael Doran, for defendant appellant.*

*The plaintiff appellee filed no brief.*

ARNOLD, Judge.

[1] We first address defendant's contention that the district judge's order granting plaintiff a divorce from bed and board is not supported by his findings of fact and conclusions of law.

Plaintiff based his action for divorce from bed and board on G.S. 50-7(4). That statute provides that the district court may grant a divorce from bed and board on application of the party injured if his or her spouse "[o]ffers such indignities to the person of the other as to render his or her condition intolerable and life burdensome."

In his judgment, the district judge made the following findings. First, defendant suffers from myasthenia gravis, a neuromuscular disease which causes her on occasion to become weak and unable to carry out her daily tasks, but which otherwise does not prevent her from leading a normal life. Plaintiff has been involved with a community rescue squad, spending on average six to eight hours a week participating in its activities. Plaintiff and defendant have had frequent and repeated arguments.

The testimony of the parties, as summarized by the district judge in his findings, indicates that these arguments have arisen out of plaintiff's devotion of time to the rescue squad and defendant's suspicion that plaintiff has had affairs with female members of the rescue squad. Plaintiff denied that he had had any extramarital affairs. Further, he offered evidence through a neighbor that on one occasion subsequent to the parties' separation defendant threw ice on a woman member of the rescue squad while the parties' daughter accused the woman of having an extramarital relationship with plaintiff. The judge found further that defendant testified that plaintiff had embarrassed her on occasion in public by calling her names such as "lardass."

In his conclusions of law, the district judge stated:

That the unfounded accusations of the Defendant and her other actions were such as to constitute such indignities to the person of the Plaintiff as to render his condition intolerable and life burdensome, *even though the Plaintiff was not blameless.* (Emphasis added.)

The defendant argues that the trial judge's findings and conclusions do not support the judgment because they indicate that plaintiff was not blameless and that he contributed to the abuses of which he complains. We agree that in North Carolina a party relying on G.S. 50-7(4) must not have provoked the "indignities" of which he complains. *Jackson v. Jackson,* 105 N.C. 433, 438-39, 11 S.E. 173, 175 (1890); *Pearce v. Pearce,* 225 N.C. 571, 572, 35 S.E. 2d 636, 637 (1945); *see also* 1 Lee, North Carolina Family Law § 82 (1979). In this case, the district judge expressly concluded that plaintiff was not blameless. His findings indicate that plaintiff devoted on average six to eight hours per week of his free time to a community rescue squad, and that this was a bone of contention in the parties' marriage. The evidence and findings indicate that the plaintiff persisted in rescue squad activities even though this disturbed his wife, and caused her to suspect that he was unfaithful. Also, the plaintiff embarrassed his wife in public by calling her names such as "lardass." While it is difficult to weigh relative fault in a case such as this, the district judge's findings compel the conclusion that plaintiff's conduct so contributed to his wife's criticism and accusations and to the parties' repeated arguments that he cannot be said to have shown a lack of adequate provocation on his part. The district judge's grant of divorce from bed and board is reversed.

[2] We next address defendant's contention that the district court erred in denying her counterclaim for alimony. Under G.S. 50-16.2, a dependent spouse is entitled to alimony when one or more of ten statutory grounds is established. In the present case the district judge concluded that the defendant was a dependent spouse but that she was not entitled to alimony as alleged in her counterclaim. In her counterclaim, defendant alleged that plaintiff "intentionally and willfully engaged in a course of conduct so as to cause her condition to become intolerable and her life burdensome" and that plaintiff constructively abandoned her. The

district court concluded that plaintiff did not abandon defendant, but that his leaving the marital residence was for just cause. This is supported by competent evidence in the record. Further, the district court's findings indicate that while plaintiff often neglected his wife while participating in rescue squad activities, and on occasion called her names in public, thus contributing to his wife's suspicions and irritation, his conduct was not such as to cause her condition to become intolerable and her life burdensome. This also is supported by competent evidence in the record. The trial judge's findings support his conclusion that the defendant is not entitled as a matter of law to alimony.

[3]   Finally, defendant contends that the trial judge erred in not granting her attorneys' fees. Defendant requested attorneys' fees to prosecute her counterclaim and, as we understand, to defend against plaintiff's action for divorce from bed and board. Defendant argues that the trial judge erred by exercising his discretion to deny attorneys' fees, when defendant was the dependent spouse and in need of assistance to meet her husband on equal terms.

The district judge may award attorneys' fees only when statute allows. Under G.S. 50-16.4, "[a]t any time that a dependent spouse would be entitled to alimony pendente lite pursuant to G.S. 50-16.3, the court may, upon application of such spouse, enter an order for reasonable counsel fees for the benefit of such spouse . . . ." Under G.S. 50-16.3, a dependent spouse is entitled to an award of alimony pendente lite if it appears from the evidence that the spouse is entitled to relief in the action in which application for alimony pendente lite is made. The district court would not be justified in making an allowance where the dependent spouse, in law, has no case. *Brady v. Brady*, 273 N.C. 299, 304, 160 S.E. 2d 13, 17 (1968). As noted above, the defendant was not entitled to alimony, and therefore is not entitled to attorneys' fees for the prosecution of her claim for alimony.

Since defendant's counterclaim involved issues of child custody and support, G.S. 50-13.6 comes into play. Under that statute, in child custody or support proceedings, "the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." The court's discretion in disallow-

ing attorneys' fees is limited only by the abuse of discretion rule. *Brandon v. Brandon*, 10 N.C. App. 457, 463, 179 S.E. 2d 177, 181 (1971). We find no abuse of discretion in the present case.

As to defendant's defense to plaintiff's action for divorce from bed and board, we find no statute giving the district judge authority to award attorneys' fees.

On the issue of attorneys' fees, we find no reversible error.

The district court's order granting divorce from bed and board is reversed; the order denying alimony and attorneys' fees is affirmed.

Reversed in part, affirmed in part.

Judges MARTIN and PARKER concur.