VANN v. VANN

[128 N.C. App. 516 (1998)]

━━━━━━━━

WALTER KENNETH VANN, Plaintiff-Appellant v. PRANOM VANN, Defendant-Appellee

No. COA97-288

(Filed 3 February 1998)

**Divorce and Separation § 200 (NCI4th)— absolute divorce— alimony—husband—no heightened duty to preserve marriage**

In an absolute divorce action where defendant wife filed a counterclaim for alimony on the grounds of indignities as provided by N.C.G.S. § 50-16.2(7)(1987) (repealed 1995), the trial court improperly found that plaintiff husband had a heightened duty to recognize the difficulties in the marriage and that plaintiff's failure to fulfill this duty constituted indignities toward defendant. There is nothing in the case law or the General Statutes sanctioning the imposition of a heightened duty on one party to preserve the marriage solely on the basis of gender and there are no compelling circumstances in this case requiring the placement of a heightened duty on plaintiff to preserve his marriage to defendant.

Appeal by plaintiff from order entered 13 June 1996 by Judge Patricia Timmons-Goodson in Cumberland County District Court. Heard in the Court of Appeals 5 January 1998.

*Richard E. Jester for plaintiff appellant.*

*No brief filed for defendant appellee.*

VANN v. VANN

[128 N.C. App. 516 (1998)]

SMITH, Judge.

Plaintiff and defendant were married on 29 April 1976 and lived together as husband and wife until their separation in November of 1991. At the time of their marriage, plaintiff was serving in the United States Air Force in Thailand. Defendant, a native of Thailand, met plaintiff while working on the Air Force base. Though the parties returned to the United States in July of 1976, plaintiff continued to serve in the Air Force and traveled to various duty stations throughout the world. On 16 December 1992, plaintiff filed a complaint seeking an absolute divorce. Defendant thereafter filed a counterclaim seeking, among other things, temporary and permanent alimony on the grounds of indignities as provided for in N.C. Gen. Stat. § 50-16.2(7) (1987) (repealed 1995). The trial court ordered plaintiff to pay temporary alimony pending a hearing on the issue of permanent alimony.

After a hearing, the trial court entered an order directing plaintiff to pay defendant permanent alimony in the amount of $150.00 per month until the death of one of the parties, defendant remarried, or through June 1997, whichever came first. The trial court based its award on the following findings of fact:

9. The plaintiff was a professional soldier who because of his career, was away from the home of the defendant and the children for months at a time. The plaintiff's absence from home for these extended periods of time substantially increased the difficulties between the plaintiff and defendant.

10. Although both the plaintiff and defendant contributed to the destruction of the marriage, the plaintiff under these circumstances had a greater duty as the husband and provider for the family to recognize the difficulties between the parties and assist in handling them, recognize them, and was insensitive to these difficulties; such constituted greater indignities to the defendant to such an extent as to render her condition intolerable and life burdensome, and without adequate provocation by the defendant, [than] did defendant's conduct toward plaintiff.

The trial court also concluded as a matter of law that "[b]oth parties have subjected each other to indignities; but that plaintiff's indignities outweigh defendant's."

On appeal, plaintiff contends the trial court erred by ordering him to pay alimony based on the finding that as husband and provider, he

had a greater duty to recognize the difficulties between him and defendant, and that his failure to do so constituted indignities rendering defendant's condition intolerable and her life burdensome. He argues that both parties to a marriage have an equal duty to preserve the marriage, and that a heightened duty should not be placed on a male solely on the basis of his role of husband and provider.

It is commonly known that "[t]he moment the marriage relation comes into existence, certain rights and duties spring into being." *Ritchie v. White*, 225 N.C. 450, 453, 35 S.E.2d 414, 415-16 (1945). At common law,

> "[t]he husband, as head of the family, [was] charged with its support and maintenance, in return for which he [was] entitled to his wife's services in all those domestic affairs which pertain to the comfort, care, and well-being of the family. Her labors [were] her contribution to the family support and care."

*Id.* at 454, 35 S.E.2d at 416-17 (citation omitted). However, in *North Carolina Baptist Hospitals, Inc. v. Harris*, 319 N.C. 347, 353, 354 S.E.2d 471, 474 (1987), our Supreme Court held that the doctrine of necessaries could be applied to a wife as well as a husband. The Court acknowledged that:

> " 'These notions no longer accurately represent the society in which we live, and our laws have changed to reflect this fact. No longer must the husband be, nor is he in all instances the sole owner of the family wealth. No longer is the wife viewed as "little more than a chattel in the eyes of the law." No longer in all cases is the husband the supporting and the wife the dependent spouse. No longer is the wife thought generally to be under the domination of her husband.' "

*Id.* at 352-53, 354 S.E.2d at 474 (citation omitted). The Court also noted several developments in the laws of our jurisdiction indicating a trend toward "gender neutrality," and pointed out that many statutory provisions formerly applied only to males were amended to apply to both genders, including N.C. Gen. Stat. § 14-322 (1981), which provided for criminal sanctions against both genders for nonsupport; N.C. Gen. Stat. § 50-16.1(4) (1984) (repealed 1995), which provided that either a husband or a wife could be deemed a supporting spouse; N.C. Gen. Stat. § 50-13.4(b) (1984), which provided that in the absence of exceptional circumstances, both mothers and fathers are primarily liable for child support; and, finally, the Equitable Distribution Act, N.C. Gen. Stat. §§ 50-20, -21 (1984 & Cum. Supp.

1985), which treated "parties to a marriage as equal partners in a joint enterprise and appear[ed] . . . to be a clear break from the archaic notions reflected in earlier statutes." *North Carolina Baptist Hospitals*, 319 N.C. at 352, 354 S.E.2d at 474. An additional development indicating "gender neutrality" in the family law area not mentioned by the Court in *North Carolina Baptist Hospitals, Inc.*, was the 1977 amendment to N.C. Gen. Stat. § 50-13.2(a), which abolished the maternal preference in child custody determinations. *See* 3 Robert E. Lee, *North Carolina Family Law* § 224, at 40-41 (4th ed. 1979).

The importance of the duty to preserve a marriage is evidenced by "our State's public policies of endeavoring to maintain the marital state . . . ." *Bruce v. Bruce*, 79 N.C. App. 579, 583, 339 S.E.2d 855, 858, *disc. review denied*, 317 N.C. 701, 347 S.E.2d 36 (1986). We find nothing in our case law or in our General Statutes sanctioning the imposition of a heightened duty on one party to a marriage to preserve the marriage solely on the basis of gender. In fact, such an imposition would be inconsistent with the marked trend in this jurisdiction toward gender neutrality in the family law area and could violate Equal Protection principles. We therefore hold that both parties to a marriage have equal and corresponding duties to protect and preserve their marriage. The existence of a compelling circumstance such as mental or physical illness or infirmity could reduce the duty of the ill or infirm spouse to preserve and protect the marriage. However, we do not believe the failure to protect or preserve the marital relationship standing alone would constitute an indignity rendering a dependent spouse's condition intolerable and life burdensome as required by N.C. Gen. Stat. § 50-16.2(7). *See Traywick v. Traywick*, 28 N.C. App. 291, 295, 221 S.E.2d 85, 88 (1976) (" 'The fundamental characteristic of indignities is that it must consist of a *course* of conduct or *continued* treatment which renders the condition of the injured party intolerable and life burdensome. The indignities must be *repeated and persisted in* over a period of time.' ") (quoting 1 Lee, *North Carolina Family Law*, § 82, at 311 (emphasis added)); 1 Suzanne Reynolds, *Lee's North Carolina Family Law* § 6.11, at 569 (5th ed. 1993) ("Through indignities, the law makes a marital offense of a course of conduct that is humiliating and/or degrading to one's spouse. Described in this way, indignities is a species of mental cruelty.")

In the instant case, there are no compelling circumstances requiring the placement of a heightened duty on plaintiff to preserve his

marriage to defendant. The trial court found that plaintiff's frequent absence from the home for extended periods of time increased the difficulties between the parties, and that defendant suffered additional hardships as a result of being a foreign-born wife. However, it is evident that both parties must have entered the marriage with knowledge that these sorts of difficulties would arise. Thus, the trial court improperly found that plaintiff had a heightened duty either to recognize the difficulties between him and defendant or to preserve the marriage, and also improperly found that his failure to fulfill this heightened duty constituted indignities toward defendant.

Reversed.

Chief Judge ARNOLD and Judge MARTIN, John C., concur.