NO. COA13-766

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

ANJELIKA DECHKOVSKAIA,
    Plaintiff,

    v.                                    Orange County
                                          No.  11-CVD-0472
ALEX DECHKOVSKAIA,
(Male's Name Spelled Deshkovski)
    Defendant.

Appeal by defendant from Orders entered 26 July 2012 by Judge Beverly A. Scarlett and 3 December 2012 by Judge Joseph M. Buckner in District Court, Orange County.  Heard in the Court of Appeals 12 December 2013.

> *Sandlin & Davidian, PA, by Lisa Kamarchik, for plaintiff-appellee.*

> *Wait Law, P.L.L.C., by John L. Wait, for defendant-appellant.*

STROUD, Judge.

Alex Deshkovski[1] ("defendant") appeals from an equitable distribution and alimony order entered 26 July 2012 distributing property the trial court classified as marital and awarding

---

[1] There is some confusion in the record regarding how to spell defendant's last name—the order lists his name both as Dechkovskaia and Deshkovski, but in various pleadings defendant has spelled his name Deshkovski, so we will use that spelling.

Anjelika Dechkovskaia ("plaintiff") $3,500 per month in alimony for twelve years. Defendant also appeals from an order entered 3 December 2012 denying his motion for a new trial and for a stay of proceedings.

## I. Background

Plaintiff and defendant were married on 7 July 1990 in the Soviet Union, in what is now Belarus, separated on or about 25 February 2011, and divorced on 30 April 2012. They have two children—one born September 1991 and a minor child born December 2004. They are both highly educated and both work in scientific fields—defendant as a professor and lecturer, and plaintiff as a researcher. Defendant moved to the United States in 1996 to pursue his higher education, achieving a master's degree and two doctorates. Within a year, plaintiff followed defendant to the United States and, in 1997, began working as a scientific research assistant and lab technician.

On 4 March 2011, plaintiff filed a complaint in Orange County requesting permanent custody of the parties' minor child, child support, postseparation support, alimony, and equitable distribution. Plaintiff alleged in the complaint that defendant had committed marital misconduct by "engaging in indignities which have rendered the condition of the plaintiff intolerable and life

burdensome in that defendant has controlled the plaintiff and the plaintiff's life throughout most of the marriage." Defendant denied the allegation, but did not allege that plaintiff had herself engaged in marital misconduct. The trial court awarded sole legal and physical custody of the parties' minor child to plaintiff and visitation for defendant by order entered 15 February 2012.

After a hearing on 30 April 2012, at which plaintiff was represented by counsel and defendant appeared *pro se*, the trial court resolved the equitable distribution and alimony issues by order entered 25 July 2012. The trial court classified various pieces of property acquired by the parties as marital property, including two houses titled in the name of the minor child. The trial court valued the parties' total estate at $591,702.00, found that an equal distribution of property would be equitable, and distributed the marital property accordingly. The trial court also found that defendant was a supporting spouse, that plaintiff was a dependent spouse, that defendant had committed marital misconduct by offering indignities to plaintiff during the marriage, and that defendant's post-separation conduct corroborated its finding of marital misconduct prior to

separation. The trial court awarded plaintiff $3,500 per month in alimony for twelve years and attorney's fees.

On 13 August 2012, defendant, now represented by counsel, filed a motion for a new trial and stay of execution under Rules 59 and 62 of the North Carolina Rules of Civil Procedure. The trial court denied defendant's motion by order entered 3 December 2012. Defendant filed notice of appeal on 2 January 2013 both from the order denying his post-trial motion and the order addressing equitable distribution and alimony.[2]

## II. Equitable Distribution

Defendant first argues that the trial court erred in its valuation of the marital estate because it included two houses in the estate not owned by either party on the date of separation. We agree.

> [T]he standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.

---

[2] Although defendant appealed from both orders, he makes no argument on appeal regarding the order denying his post-trial motions. Therefore, any argument concerning that order has been abandoned. N.C.R. App. P. 28(a).

> The trial court's findings need only be supported by substantial evidence to be binding on appeal. We have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. As to the actual distribution ordered by the trial court, when reviewing an equitable distribution order, the standard of review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason.

*Peltzer v. Peltzer*, ___ N.C. App. ___, ___, 732 S.E.2d 357, 359-60 (citations, quotation marks, and brackets omitted), *disc. rev. denied*, 366 N.C. 417, 735 S.E.2d 186 (2012).

The trial court determined that two houses purchased by the parties during the marriage were marital property despite being titled in the name of the parties' minor child. On the date of separation, neither party owned the houses at issue. The trial court specifically found that both properties were titled "in the minor child's name upon acquisition." Nevertheless, plaintiff now argues that even if the houses were titled in the minor child's name, defendant had an equitable interest in the property, such as a constructive trust, with the minor child as trustee.[3]

---

[3] We note that the property was apparently acquired some time prior to the child's seventh birthday.

"In an equitable distribution proceeding, only marital property is subject to distribution by the court. G.S. 50-20(a)." *Lawrence v. Lawrence*, 100 N.C. App. 1, 16, 394 S.E.2d 267, 275 (1990). For purposes of N.C. Gen. Stat. § 50-20, "marital property" "means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned . . . ." N.C. Gen. Stat. § 50-20(b)(1) (2011). Based upon the unchallenged finding by the trial court, it appears that the houses were titled to the minor child when they were purchased, and it is uncontested that only the parties' minor child held title to the two contested houses on the date of separation.

First, we must consider whether this issue has been preserved for our review. We conclude that it has. As discussed below, the trial court must join the title owner, in this case the minor child, as a necessary party to the action in order to adjudicate ownership of the two houses. "Otherwise the trial court would not have jurisdiction to enter an order affecting the title to that property." *Upchurch v. Upchurch*, 122 N.C. App. 172, 176, 468 S.E.2d 61, 64, *disc. rev. denied*, 343 N.C. 517, 472 S.E.2d 26 (1996). Our review of this issue has not been waived by defendant's failure to raise it below. *See Kor Xiong v. Marks*, 193 N.C. App. 644, 652,

668 S.E.2d 594, 600 (2008) ("An appellate court has the power to inquire into jurisdiction in a case before it at any time . . . .").

To the extent that plaintiff claims that the minor child holds the properties only in some sort of constructive trust for the marital estate, that issue cannot be determined unless the minor child—who holds title to the property—is made a party to the action. *See Upchurch*, 122 N.C. App. at 176, 468 S.E.2d at 63-64 (discussing the classification of property allegedly held in trust for the marital estate and holding that "when a third party holds legal title to property which is claimed to be marital property, that third party is a necessary party to the equitable distribution proceeding, with their participation limited to the issue of the ownership of that property."). Where, as here, a minor child's property interests are adverse to that of his parent, the trial court must appoint a guardian ad litem to represent his interests.[4] *Kohler v. Kohler*, 21 N.C. App. 339, 341, 204 S.E.2d 177, 178 (1974) (concluding that "an infant must appear by guardian or guardian ad

---

[4] Here, the trial court did appoint a guardian ad litem, but the order appointing the guardian specifically limited his duties to investigation of custodial issues and to file a report ("GAL report") addressing the parties' treatment of each other and the minor child, not to represent the minor's property interests. The GAL's report indicates that he considered only the issues as directed by the trial court's order.

litem" to determine his property interests); *Irvin v. Harris*, 189 N.C. 465, 468, 127 S.E. 529, 531 (1925) (observing that the better practice to determine property rights when the parent's interests are not identical to that of the minor child owner is to appoint a guardian ad litem). Without the presence of the minor as a party to the action, represented by a guardian ad litem or next friend, the trial court cannot divest him of his ownership interest in the real property. *See Dorton v. Dorton*, 77 N.C. App. 667, 676, 336 S.E.2d 415, 421 (1985) ("Defendant's mother was not a party to this action, and the trial court cannot deprive her of rights as a creditor without affording her the due process rights to notice and an opportunity to be heard."); *Lawrence*, 100 N.C. App. at 16, 394 S.E.2d at 274 (holding that the trial court could not order the minor children of the divorcing parties to pay certain taxes when they are not parties to the action); *Parker v. Moore*, 263 N.C. 89, 90-91, 138 S.E.2d 821, 822 (1964) ("Before funds belonging to infants and incompetents may be taken from them, the law requires that they be represented by guardian, guardian *ad litem*, or next friend as the situation may require."). Moreover, once the minor child is made a party to the action, if the trial court were to determine that the houses were held in a constructive trust created during the marriage, it must make appropriate findings to

that effect based on clear and convincing evidence. *Glaspy v. Glaspy*, 143 N.C. App. 435, 441, 545 S.E.2d 782, 786 (2001). No such findings have been made here. Therefore, the trial court lacked authority to classify the two houses as martial property, to include them in the valuation of the marital estate, and to distribute them to defendant.

Defendant also challenges the trial court's finding that the parties had stipulated that their marital residence had a net value of $210,000. He contends, and plaintiff concedes, that they had actually stipulated that the marital residence was worth $205,000. The $5,000 difference appears to be simply a typographical error, and *de minimis* at best, given that the trial court found the total marital estate to be worth $591,702. *See Cohoon v. Cooper,* 186 N.C. 26, 28, 118 S.E. 834, 835 (1923) (declaring that an error of 95 cents out of a $663 verdict would be *de minimis*). Nevertheless, since we must remand on the other equitable distribution issue, the trial court should also correct this finding on remand.

To determine ownership of the two houses, the trial court must join the minor child as a party and appoint a guardian ad litem to represent his property interests. Because it failed to do so here, it had no authority to classify the houses as marital property and distribute them as such. Additionally, it made no

finding that the houses were held in constructive trust for the martial estate. Although the findings of fact also do not reveal the parties' reasons, if any, for vesting title to real estate in a young child, the trial court on remand may also consider, as appropriate and if raised by the parties, whether an unequal distribution of the marital property may be equitable under N.C. Gen. Stat. § 50-20(c). Therefore, we must vacate the equitable distribution order and remand for further proceedings. *See Boone v. Rogers*, 210 N.C. App. 269, 272, 708 S.E.2d 103, 106 (2011) (vacating judgment where the trial court failed to join all necessary parties); *Balawejder v. Balawejder*, ___ N.C. App. ___, ___, 721 S.E.2d 679, 691 (2011) (vacating order entered without jurisdiction).

## III. Alimony

Defendant next argues that the trial court abused its discretion in awarding plaintiff $3,500 per month in alimony and that its findings relating to marital misconduct are unsupported by competent evidence. Defendant does not otherwise challenge the appropriateness of the alimony award or the adequacy of the trial court's findings. Nor does defendant challenge the amount or duration of the alimony award on the basis that it is not supported by the evidence as to the parties' incomes, needs, and expenses.

Therefore, we deem any such arguments abandoned. N.C.R. App. P. 28(a). It is uncontested that plaintiff is a dependent spouse, that defendant is the supporting spouse, and that plaintiff is entitled to alimony. Yet it does appear from the findings that the trial court considered the marital misconduct as a factor in establishing the amount and term of alimony. The only disagreement concerns whether the trial court's findings on the marital misconduct factor were supported by competent evidence.

> Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. An abuse of discretion has occurred if the decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.

*Kelly v. Kelly*, ___ N.C. App. ___, ___, 747 S.E.2d 268, 272-73 (2013) (citations and quotation marks omitted).

One of the factors that a trial court must take into account in awarding alimony, when relevant, is marital misconduct. N.C. Gen. Stat. § 50-16.3A(b)(1) (2011). Marital misconduct includes "[i]ndignities rendering the condition of the other spouse intolerable and life burdensome" during the marriage and on or

before the date of separation. N.C. Gen. Stat. § 50-16.1A(3)(f) (2011).

> Our courts have declined to specifically define "indignities," preferring instead to examine the facts on a case by case basis. Indignities consist of a course of conduct or repeated treatment over a period of time including behavior such as unmerited reproach, studied neglect, abusive language, and other manifestations of settled hate and estrangement.

*Evans v. Evans*, 169 N.C. App. 358, 363-64, 610 S.E.2d 264, 269 (2005) (citations and quotation marks omitted).[5]

The trial court found that defendant had engaged in marital misconduct by offering indignities to plaintiff. Specifically, the trial court found that defendant had:

>   a. Refused to live with Plaintiff and the children in the marital home separate and apart from his mother;
>
>   b. Refused to allow Plaintiff and the children to associate with others who are not Russian;
>
>   c. Controlled the food eaten by Plaintiff and the children. Consistently telling Plaintiff and the children American food was bad for them and would not let them eat at public places.

---

[5] *See also Barwick v. Barwick*, 228 N.C. 109, 112, 44 S.E.2d 597, 599 (1947) (noting the difficulty of creating a clear definition of indignities); *Traywick v. Traywick*, 28 N.C. App. 291, 295, 221 S.E.2d 85, 88 (1976) (observing that indignities must consist of a course of conduct, "*repeated and persisted in* over a period of time." (citation and quotation marks omitted)).

    d. Refused to allow the Parties' minor son to attend public school resulting in the Plaintiff receiving letters from the Durham County District Attorney's office pursuant to the truancy laws of this State. As a result, Plaintiff sought and obtained an emergency order which ordered the minor child attend school.

Additionally, the trial court found that "Defendant has controlled all the finances during the marriage without giving Plaintiff access to the bank accounts or PINs for the accounts," that "Defendant has engaged in parental alienation prior to the date of separation and after the date of separation," and that defendant's actions had been intentional and malicious.[6]

The trial court further found that plaintiff had suffered emotional abuse from defendant's control and his attempts to make plaintiff and their children reliant upon him by isolating them from the larger community. Finally, it found that defendant's post-separation conduct corroborated its finding that defendant had subjected plaintiff to indignities during the marriage, as permitted by N.C. Gen. Stat. § 50-16.3A(b)(1).

---

[6] The trial court included these findings in its section on post-separation conduct, but taken in context, the plain language of the findings indicates that the trial court found that defendant had engaged in this conduct prior to separation.

Defendant argues that these findings are unsupported by the evidence. First, we note that defendant concedes that several of the challenged findings may be supported by the GAL report, but argues that the report was inadmissible for purposes of alimony. Defendant did not object to the trial court's consideration of this report in considering alimony, so any objection thereto has not been preserved. N.C.R. App. P. 10(a)(1).

The GAL report does in fact fully support all of the trial court's relevant findings and supports its ultimate finding that defendant offered indignities to plaintiff. It paints a picture of defendant as controlling and verbally abusive, and describes a pattern of isolating plaintiff and the parties' children from broader society.[7] This type of overwhelming control and attempted isolation supports the trial court's findings on indignities, especially considering that plaintiff was a relatively recent immigrant to this country. *See Barwick*, 228 N.C. at 112, 44 S.E.2d at 599 (noting that indignities are not specifically defined in part because "[t]he station in life, the temperament, state of health, habits and feelings" of the persons concerned can be quite varied). Moreover, despite defendant's arguments to the contrary,

---

[7] We are only describing the GAL report in general terms because it remains under seal by stipulation of the parties and order of the trial court.

the findings show that these indignities were part of a long-standing course of conduct and not an isolated incident. Therefore, we hold that there was evidence to support the trial court's finding of marital misconduct by defendant.

Defendant further argues that the trial court failed to find that the indignities he offered to plaintiff were "without adequate provocation." Defendant has not alleged that plaintiff provoked the indignities found by the trial court, nor even argued on appeal that there was evidence which could support such a finding. Indeed, the argument that a spouse—of either sex—could legally justify emotional or verbal abuse of the nature found by the trial court by some sort of "provocation" strains credulity, at least based upon modern sensibilities and values.[8]  N.C. Gen. Stat. § 50-16.1A does not mention the word "provocation" and we have found no case decided under that statute requiring that the trial court explicitly find an absence of provocation to find that one of the spouses had offered indignities to the other. It is not entirely clear that such a finding is required at all, although as we will discuss below, there is case law to support this argument.

---

[8] Such justification was accepted by our Supreme Court as early as the 1800s and as recently as 1955, as we will discuss more fully below.

Many of the old cases discussing indignities under the former statutes on fault-based divorce and divorce from bed and board did require a very specific factual allegation that there was no provocation for the indignities offered. Although the words "without provocation" have been repeated and cited since the early 1800s in North Carolina and they continue to be used, an examination of the old cases where the phrase originated reveals that these cases are based not only on antiquated beliefs about the roles of husband and wife, but also upon specific statutes and rules of pleading which existed at that time but have long since been changed by amendments to the relevant substantive statutes and adoption of the North Carolina Rules of Civil Procedure.

One early and enlightening example is *Joyner v. Joyner*, 59 N.C. (6 Jones Eq.) 322 (1862). The wife brought a claim against the husband for divorce from bed and board and alimony and was awarded alimony *pendente lite*, from which the husband appealed. *Joyner*, 59 N.C. (6 Jones Eq.) at 322. The wife alleged that the husband had

> manifested great coarseness and brutality, "and even inflicted the most severe corporal punishment. This he did on two different occasions, once with a horse-whip, and once with a switch, leaving several bruises on her person." "He used towards her abusive and insulting language, accused her of carrying away articles of property from his premises to

her daughter by a former husband; refused to let said child live with her; has frequently at night, after she had retired, driven her from bed, saying that it was not hers, and that she should not sleep upon it. He has also forbade her sitting down to his table in company with his family," and that "by such like acts of violence and indignity has forced her to leave his house, and that she is now residing with her friends and relatives, having no means of support for herself and an infant son born within the four past weeks."

*Id.* She further alleged that during her entire marriage to defendant she had "been a dutiful, faithful and affectionate wife." *Id.*

The Supreme Court first addressed the specific requirements of the statute regarding the grounds upon which divorces may be granted and the pleading requirements for these grounds, noting that

as a check or restraint on applications for divorces, and to guard against abuses, it is provided that the cause or ground on which the divorce is asked for shall be set forth in the petition "particularly and specially." It is settled by the decisions of this Court that this provision of the statute must be strictly observed, and the cause or causes for which the divorce is prayed must be set forth so "particularly and specially," as to enable the Court to see on the face of the petition, that if the facts alleged are true the divorce ought to be granted . . . .

*Id.* at 323.

At that time, "[b]y the rules of pleading in actions at the common law, every allegation of fact, [had to] be accompanied by an allegation of 'time and place.'" *Id.* at 324. Yet the Supreme Court held that the wife's claim was not defeated by her failure to allege "time and place" of her physical abuse, since those facts were not "material." *Id.*[9] Instead, the wife's fatal pleading error was that she failed to allege what she had done to induce the husband to beat her—apparently based upon the unstated assumption that she clearly did something, and the relevant question would be whether what she did justified the husband's actions. *Id.* The Supreme Court held that she must allege

> the circumstances under which the blow with the horse-whip and the blows with the switch were given; for instance, what was the conduct of the petitioner; what had she done, or said to induce such violence on the part of the husband? . . . . [T]here was an obvious necessity for some explanation, and the cause of divorce could not be set forth "particularly and specially," without stating the circumstances which gave rise to the alleged grievances.

*Id.*

---

[9] The reason they were not material is not—as we today might think—because there simply is no proper time or place to horse-whip your wife, but because she did not allege some time or place-sensitive abuse, such as that she was pregnant while he was beating her, or that he had beat her in a public place. *Id.*

The Court explained that such "discipline" would be justified in certain circumstances for two reasons. The first reason is the husband's role as set forth in Genesis 3:16: "Thy desire shall be to thy husband, and he shall rule over thee." *Id.* at 325. The Court reasoned that "It follows that the law gives the husband power to use such a degree of force as is necessary to make the wife behave herself and know her place." *Id.* Second, the Court noted that the husband is legally responsible for the wife's behavior "under the principles of the common law," noting that a husband is responsible to pay damages if "a wife slanders or assaults and beats a neighbor" and that a wife is not responsible for commission of "a criminal offense, less than felony, in the presence of her husband." *Id.* The Court also noted that the wife "cannot make a will disposing of her land" and "cannot sell her land without a privy examination, separate and apart from her husband." *Id.* For these reasons, the Court concluded that the law must give "this power to the husband over the person of the wife, and has adopted proper safe-guards to prevent an abuse of it." *Id.*

The Supreme Court then helpfully discussed some hypothetical situations in which a husband might be justified in horse-whipping his wife:

> It is sufficient for our purpose to state that
> there may be circumstances which will

mitigate, excuse, and so far justify the husband in striking the wife "with a horse-whip on one occasion and with a switch on another, leaving several bruises on the person," so as not to give her a right to abandon him and claim to be divorced. For instance: suppose a husband comes home and his wife abuses him in the strongest terms—calls him a scoundrel, and repeatedly expresses a wish that he was dead and in torment! and being thus provoked in the *furor brevis*, he strikes her with the horse-whip, which he happens to have in his hands, but is afterwards willing to apologise, and expresses regret for having struck her: or suppose a man and his wife get into a discussion and have a difference of opinion as to a matter of fact, she becomes furious and gives way to her temper, so far as to tell him he *lies*, and upon being admonished not to repeat the word, nevertheless does so, and the husband taking up a switch, tells her if she repeat it again, he will strike her, and after this notice, she again repeats the insulting words, and he thereupon strikes her several blows; these are cases, in which, in our opinion, the circumstances attending the act, and giving rise to it, so far justify the conduct of the husband as to take from the wife any ground of divorce for that cause, and authorise the Court to dismiss her petition, with the admonition, "if you will amend your manners, you may expect better treatment;" see Shelford on Divorce. So that there are circumstances, under which a husband may strike his wife with a horse-whip, or may strike her several times with a switch, so hard as to leave marks on her person, and these acts do not furnish sufficient ground for a divorce.

*Id.* at 325-26.

Thus the Supreme Court held that mere verbal statements by the wife—calling her husband a "scoundrel" or "liar" or wishing him dead—would legally justify his striking her with a horsewhip (if he then apologizes) or striking her "several times with a switch, so hard as to leave marks on her person." *Id.*[10]

N.C. Gen. Stat. § 50-16.1A(3)(f) does not mention lack of provocation as an element of "indignities." It simply states that one form of marital misconduct consists of "[i]ndignities rendering the condition of the other spouse intolerable and life burdensome." N.C. Gen. Stat. § 50-16.1A(3)(f). Yet it is also true that the definition of indignities under N.C. Gen. Stat. § 50-16.1A(2)(f) is the same as it is under N.C. Gen. Stat. § 50-7, and as it was under the repealed § 50-16.1 and the repealed § 50-16, for which the courts of this state have required an allegation

---

[10] Just a few years later, in *State v. Oliver*, 70 N.C. 60 (1874), a criminal case, the Supreme Court rejected the prior cases which allowed a husband to whip his wife "provided he used a switch no larger than his thumb," stating that this "is not law in North Carolina. Indeed, the Courts have advanced from that barbarism until they have reached the position, that the husband has no right to chastise his wife, under any circumstances." *Oliver*, 70 N.C. at 61. Yet the Court still recognized that not all physical abuse would be worthy of intervention by the courts: "But from motives of public policy,—in order to preserve the sanctity of the domestic circle, the Courts will not listen to trivial complaints. If no permanent injury has been inflicted, nor malice, cruelty nor dangerous violence shown by the husband, it is better to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive." *Id.* at 61-62.

that the indignities were offered without provocation. *See, e.g.*, *Puett v. Puett*, 75 N.C. App. 554, 557, 331 S.E.2d 287, 290 (1985), *Vandiver v. Vandiver*, 50 N.C. App. 319, 328, 274 S.E.2d 243, 249 (1981), *and Cushing v. Cushing*, 263 N.C. 181, 187, 139 S.E.2d 217, 222 (1964). Indeed, this same language can be found in every version of the North Carolina divorce and alimony statutes from 1814 onward. *See* 2 Laws of the State of North Carolina 1292, 1294 (Raleigh, Henry Potter 1821). The requirement of a lack of provocation has simply been a judicial gloss on this simple language, added generations ago in cases like *Joyner* and repeated over the years, usually without any consideration of its origins.

In considering how this ancient rule applies to the modern alimony statute, we cannot ignore the substantial changes in procedural law, substantive family law, or "the vast changes in the status of woman—the extension of her rights and correlative duties—whereby a wife's legal submission to her husband has been wholly wiped out, not only in the English-speaking world generally but emphatically so in this country." *State v. Stroud*, 147 N.C. App. 549, 560, 557 S.E.2d 544, 551 (2001) (quoting *United States v. Dege*, 364 U.S. 51, 54, 4 L.Ed.2d 1563, 1565 (1960)), *cert. denied*, 356 N.C. 623, 575 S.E.2d 758 (2002).

First, since this doctrine was created, there have been vast changes in the pleading requirements and procedural law applicable in domestic cases. *See Shingledecker v. Shingledecker*, 103 N.C. App. 783, 786, 407 S.E.2d 589, 591 (1991) (noting that the "defendant's contention [that the plaintiff's complaint was fatally deficient in that it failed to allege lack of provocation of the indignities alleged] was supported by cases decided prior to the enactment of the North Carolina Rules of Civil Procedure at G.S. § 1A-1," but holding that that issue is not reviewable after a motion to dismiss is denied by the trial court). In addition, a dependent spouse no longer has to plead fault in order to receive a divorce or alimony from a supporting spouse. *See* N.C. Gen. Stat. § 50-6.; N.C. Gen. Stat. § 50-16.3A(a).

Second, the substantive changes to North Carolina family law severely undermine the rationale for the provocation rule. It appears to us that, to the extent this rule is relevant at all, the old consideration of provocation may now be addressed under the various statutory forms of marital misconduct, which the trial court now weighs with other factors in considering the amount of alimony. *See Romulus v. Romulus*, ___ N.C. App. ___, ___, 715 S.E.2d 308, 325 (2011) (explaining that for all forms of marital misconduct other than "illicit sexual behavior," "the trial court

has the discretion to weigh all of the other forms of "marital misconduct" and to determine what effect, if any, the misconduct should have upon the alimony award."). For instance, if a husband excessively uses alcohol "so as to render the condition of the other spouse intolerable," N.C. Gen. Stat. § 50-16.1A(3)(h), while his wife constantly verbally abused him, N.C. Gen. Stat. § 50-16.1A(3)(f), a trial court might justifiably find that both parties had engaged in marital misconduct but could still award alimony, after weighing their misconduct in light of the other alimony factors to determine the equitable amount of alimony. *See Romulus*, ___ N.C. App. at ___, 715 S.E.2d at 325. Looking back to the ancient cases on "provocation," perhaps a less enlightened way of looking at this would be to say that the wife must prove that if she verbally abused the husband, she did so only because her husband's excessive drinking "provoked" her to do so, and not that she had driven her husband to drink by her incessant nagging.

But this sort of reasoning as to provocation seems inconsistent with the factor analysis now required by N.C. Gen. Stat. § 50-16.3A, as it would require the complaining spouse to prove a negative—that she did not "provoke" the misconduct of the other spouse—before the trial court may consider the misconduct as

a factor supporting an award of alimony.[11] Our Supreme Court has recognized that "[t]o require the complaining party to allege and prove lack of provocation at first blush may seem illogical and out of place." *Allen v. Allen*, 244 N.C. 446, 450, 94 S.E.2d 325, 329 (1956). It justified such a seemingly illogical pleading requirement on the basis that it would allow the courts to ensure "that the assistance of the law in breaking up the family is used for the benefit of the injured party only." *Id.* at 451, 94 S.E.2d at 329. This rationale no longer applies. Unlike under the former fault-based divorce statutes, a dependent spouse seeking alimony does not have to show that the supporting spouse offered her indignities for the trial court to award the relief she seeks, *see* N.C. Gen. Stat. § 50-16.3A, and, as a result, has no bearing on the state's interest in stable family units.

Finally, it is clear that there have been vast societal changes since the Supreme Court created the provocation rule. In 1920, women obtained the right to vote by the 19th Amendment to the United States Constitution. Husbands are no longer legally responsible for a wife's slander or assault of a neighbor; wives are now responsible for their own criminal offenses of all sorts,

---

[11] Of course, fault is no longer required for an award of alimony; it is simply a factor which may be considered if raised by the parties. *See* N.C. Gen. Stat. § 50-16.3A.

felony or misdemeanor. Women can now own and convey property separate and apart from their husbands. Women are now competent to testify against their husbands as to a criminal charge of "assault and battery" even if it does not "inflict[] or threaten[] a lasting injury or great bodily harm."[12] N.C. Gen. Stat. § 8-57 (b)(2) (2013). Husbands and wives are now considered separate legal persons capable of criminal conspiracy between themselves. *Stroud*, 147 N.C. App. at 561, 557 S.E.2d at 551. Beating your wife with a horsewhip, switch, or any other weapon, for that matter, is now both a crime and grounds for entry of a Domestic Violence Protective Order, and the fact that the wife may have verbally "abuse[d] him in the strongest terms," even by calling him a scoundrel and wishing him dead is no defense. *See* N.C. Gen. Stat. § 14-33(c)(2) (assault on a female) (2013); N.C. Gen. Stat. § 50B-2 (2013) (providing for legal relief from domestic violence).

Despite these changes in law and society, as well as many others, our courts have continued on occasion to cite the language

---

[12] *Cf. State v. Hussey*, 44 N.C. (Busb.) 123, 127 (1852) ("The rule, as we gather it from authority and reason, is, that a wife may be a witness against her husband from felonies perpetrated, or attempted to be perpetrated on her, and we would say for an assault and battery which inflicted or threatened a lasting injury or great bodily harm; but in all cases of a minor grade she is not. In this case, there is no pretence that any lasting injury was inflicted; on the contrary, the case states that the injury was temporary.").

of these old cases. *See, e.g., Ollis v. Ollis*, 241 N.C. 709, 711, 86 S.E.2d 420, 421-22 (1955) ("It is not enough for the wife to allege the husband has been abusive and violent toward her, . . . . but also she must set forth what, if anything, she did to start or feed the fire of discord so that the court may determine whether she provoked the difficulty."). This rule required such an allegation despite a similar absence of any such language in the relevant statutes.[13] Even fifty years ago, our Supreme Court stated that this "lack of provocation" rule is one of "debatable" benefits that is "so very old that the years have barnacled it in numberless cases upon our practice," *Cushing*, 263 N.C. at 187, 139 S.E.2d at 222, but the Court did not go so far as to overrule these cases. As discussed above, the rule appears to stem from an ancient understanding of marriage which required that a wife show adequate

---

[13] *See* N.C. Gen. Stat. § 50-7 (1984); *Puett*, 75 N.C. App. at 557, 331 S.E.2d at 290 ("We agree that in North Carolina a party relying on G.S. 50-7(4) must not have provoked the 'indignities' of which he complains." (citations omitted)); N.C. Gen. Stat. § 50-16.1 (1978); *Vandiver*, 50 N.C. App. at 328, 274 S.E.2d at 249 (under N.C. Gen. Stat. § 50-16.1, approving of jury instructions that required the jury to decide whether the indignities were offered "without provocation"); N.C. Gen. Stat. § 50-16 (1966); *Cushing*, 263 N.C. at 187, 139 S.E.2d at 222 (holding that under N.C. Gen. Stat. § 50-7, "which G.S. § 50-16 incorporates," a wife seeking to prove indignities "is required, therefore, not only to set out with particularity those of her husband's acts which she contends constituted such indignities as to render her condition intolerable and her life burdensome but also to show that those acts were without adequate provocation on her part.").

cause to leave her "proper place" and that she would be unable to procure a divorce if she "provoked" the indignities of which she complained.[14]   This Court has previously noted that "[t]hese notions no longer accurately represent the society in which we live, and our laws have changed to reflect this fact." *Vann v. Vann*, 128 N.C. App. 516, 518, 495 S.E.2d 370, 372 (1998) (citation and quotation marks omitted).

"It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." *Stroud*, 147 N.C. App. at 561, 557 S.E.2d at 551 (quoting *Dege*, 364 U.S. at 53-54, 4 L.Ed.2d at 1565). In 1912, Chief Justice Clark presciently observed that

---

[14] *See Wilcox v. Wilcox*, 36 N.C. (1 Ired.Eq.) 36, 42-43 (1840) ("[I]t cannot for a moment be pretended, that every act of improper conduct, on the part of a husband, will authorise a wife to leave her proper place--his side, and his home--and if she alleges that he has been guilty of such gross misconduct as to justify this seeming revolt from her duty, she must so charge the misconduct, that it may be judicially seen, when the fact is ascertained, whether it be of that character which induces a forfeiture of his right to her society, and that he may have a full opportunity of answering distinctly to the misconduct charged, and of explaining or disproving it."); *Foy v. Foy*, 35 N.C. (13 Ired.) 90, 96 (1851) ("If a wife leave a husband, and refuses to live with him, *without sufficient cause*, and he afterwards lives in adultery, this is no cause of divorce; for, the consequence may be ascribed to her prior violation of the duty of a wife.").

Even statutes have been held obsolete and unenforcible [sic] because of changed conditions and the long lapse of time. Certainly this ought to be true of decisions which rest upon no statute and which are now contrary to every sense of right and opposed to the spirit of our Constitution and of the age in which we live.

The "common law" has been praised because of the very fact that, being "judge-made," it was flexible and could be molded from time to time to fit the changing conditions of society. But it loses this sole excellence when it is used to thwart beneficial statutes, expressing the demand of the age for more just and benign laws, by construing them according to the darkened and narrow views of the judges of the fourteenth century, and not according to the intendment of legislators imbued with the enlightened ideas of the twentieth century. . . .

There are of course principles of the common law which are eternally just and which will survive throughout the ages. But this is not because they are found in a mass of error or were enunciated by judges in an ignorant age, but because they are right in themselves and are approved, not disapproved as much of the common law must be, by the intelligence of today.

As, however, common-law views as to the status of women still survive among a few and are still urged as law, it would not be amiss should the General Assembly make such enactment in this regard as that body may deem just and proper. Every age should have laws based upon its own intelligence and expressing its own ideas of right and wrong. Progress and betterment should not be denied us by the dead hand of the Past. The decisions of the courts

> should always be in accord with the spirit of
> the legislation of to-day [sic] . . . .

*Price v. Charlotte Electric Ry. Co.*, 160 N.C. 450, 456-57, 76 S.E. 502, 504-05 (1912) (Clark, C.J., concurring).

Nevertheless, we cannot overrule our Supreme Court's opinions or those issued by other panels of this Court simply because the rule they recite is old and developed under statutes repealed long ago. *See Andrews ex rel. Andrews v. Haygood*, 188 N.C. App. 244, 248, 655 S.E.2d 440, 443 (2008) ("[T]his Court has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow those decisions until otherwise ordered by our Supreme Court." (citation, quotation marks, brackets, and ellipses omitted)); *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding that one panel of the Court of Appeals cannot overrule another). The State of North Carolina, its families, and its courts could benefit from the Supreme Court's reconsideration of this ancient doctrine that appears to be inconsistent with our existing statutory scheme of post-separation support and alimony and "inconsistent with the marked trend in this jurisdiction toward gender neutrality in the family law area." *Vann*, 128 N.C. App. at 519, 495 S.E.2d at 372.[15]

---

[15] Although the concept is technically "gender neutral" as it is now applied to both husbands and wives, it is clear that in the

Here, even assuming the rule as to provocation does apply, defendant did not raise plaintiff's failure to allege a "lack of provocation" below and did not present any evidence which could sustain a finding of "provocation" on plaintiff's part. The trial court is not normally required to make findings on issues not raised by the evidence. *See Friend-Novorska v. Novorska*, 143 N.C. App. 387, 395 n.3, 545 S.E.2d 788, 794 n.3 (2001) ("The ultimate facts at issue in the case are facts relating to the factors set forth in section 50-16.3A(b) for which evidence is presented at trial."). Moreover, the trial court's findings, taken as a whole, make clear that plaintiff did nothing that could be considered "adequate provocation" of defendant's abuse. Therefore, even assuming that a "want of provocation" is still an element of indignities under N.C. Gen. Stat. § 50-16.1A, the trial court here did not err in finding that defendant had subjected plaintiff to indignities constituting marital misconduct.

As noted above, defendant only argues that the trial court abused its discretion in awarding plaintiff $3,500 per month in alimony for twelve years because its findings on marital misconduct

---

past the rule was often used in practice as a means for a husband to justify his refusal to continue to support, or even to justify his physical abuse of, a wife who had failed to fulfill her proper role as a wife and mother, and the cases all reflect this background.

are unsupported by the evidence. Defendant does not otherwise challenge the alimony order or the trial court's consideration of other alimony factors. Therefore, any such arguments have been abandoned. N.C.R. App. P. 28(a). There was sufficient evidence to support the trial court's findings on marital misconduct, and defendant has shown no abuse of discretion in the trial court's consideration of this misconduct in setting the amount and term of the alimony award.

Yet our ruling cannot end here, since we realize that the alimony award was made in conjunction with the equitable distribution award, and the trial court may need to reconsider the alimony amount in light of any changes to the property distribution. *See* N.C. Gen. Stat. § 50-16.3A(a); *Lamb v. Lamb*, 103 N.C. App. 541, 547, 406 S.E.2d 622, 625 (1991). Therefore, we remand the alimony award only so that the trial court may reconsider the amount and term of alimony based upon the new equitable distribution determination.

This opinion does *not* permit the parties to revisit the issue of marital misconduct on remand, as we have found that the trial court did not err as to this issue, and this opinion does not dictate that the trial court should or should not change the alimony award on remand; we merely permit the trial court to

exercise its discretion on remand to reconsider the alimony amount and term, as the trial court must have the ability to consider the alimony award in light of the new equitable distribution award entered on remand, since they were considered together in the prior trial and order.

## IV. Conclusion

For the foregoing reasons, we vacate the portion of the trial court's order concerning equitable distribution and remand for the trial court to appoint a GAL, or expand the existing GAL's responsibilities, to represent the property interests of the minor child, who is the uncontested holder of legal title to the two houses distributed to defendant. We remand the portion of the trial court's order concerning alimony only for the limited purpose of reconsideration of the amount and term based upon the ultimate equitable distribution award.

VACATED in part and REMANDED.

Judge DILLON concurs.

Judge HUNTER, JR., Robert N. concurs in the result only.